While the answer of the appellant admits, in the terms averred in the complaint, that, during the term of office of the principal, as supervisor of the town of Sullivan, large sums of money, raised and collected according to law, in and belonging to the town, came to his hands as such supervisor, it denies each and every other allegation of the complaint.
Issue is thus taken upon the averment that the principal in the bond, as supervisor, received the sums alleged to have been collected for the temporary relief of the poor, and for the improvement of the roads and bridges of the town; and the exception to the conclusion of law of the referee presents the question as to the liability of the sureties for these moneys upon the facts agreed upon, and as found by the referee. Evidently, the only matter in issue was as to the legal liability of the sureties for these specific sums of money, and the form of the issue, and of the exception to the report, fairly raises the question actually tried and decided. No point is made in this court upon the form of the bond. The condition is in strict conformity with the act pursuant to which it was given, and is for the faithful discharge by the principal of his duties as supervisor; and that "he will well and truly keep and pay over and account for all moneys belonging to his town, and coming into his hands as such supervisor." (Laws of 1868, chap. 721, § 2.) The validity of the bond is conceded. The question is as to its interpretation. The only objection to the recovery is, that the moneys for which a recovery was *Page 424 
had are not within the condition of the bond. The bond is conditioned to account for and pay over all moneys belonging to the town, and coming into the hands of the principal "as supervisor." Other statutes have been enacted, from time to time, requiring security from supervisors for moneys coming to them in their official capacity for specific purposes. The act passed in 1866 (chap. 534), of which the act of 1868 is an amendment, requiring security for all moneys belonging to the town, that should come to the hands of supervisors, as such, probably superceded the special acts, as it requires security for all moneys paid to supervisors, pursuant to law, for any public use within the town.
Overseers of the poor and commissioners of highways who, by law, are charged with the disbursement of the two sums of money for which a recovery has been had, are required, by statute, to give bonds, with sureties, with like conditions as that required by law of supervisors. (Laws of 1855, chap. 269; id., 1845, chap. 180, § 3.) By law, boards of supervisors are required to cause to be raised by tax and paid to the overseers of the poor all moneys for the temporary relief of the poor of towns, and this was the purpose for which one of the specific sums mentioned in the complaint was collected. (Laws of 1845, chap. 334, § 7.) A like direction is given to the supervisors in respect to moneys raised by tax for highway purposes, or the construction and improvement of the roads and bridges. They are to cause them to be collected and paid to the commissioners of highways. (1 R.S., 511, § 50; Laws of 1865, chap. 522) This embraces the other of the specific sums of money mentioned. The officers named are charged with the receipt and disbursement of moneys raised for purposes within their respective official duties, and they and their sureties are liable to the public for the safe keeping and proper disbursement of all such moneys. The supervisor has no authority, under the law, to receive moneys, even in transit, raised by tax for the support of highways and bridges, or of the poor. Moneys raised for such purposes are expressly excluded from those which he is authorized to *Page 425 
receive or pay over. (1 R.S., 349, § 1.) The board of supervisors are required, in the warrant annexed to the assessment roll for the collection of taxes, to direct the collector to pay to the commissioners of highways such sums as shall have been raised for the support of highways and bridges; and to the overseer of the poor such sum as shall have been raised for the support of the poor; and to the supervisor all moneys other than those raised for those purposes, and for the support of common schools, and which shall have been raised to defray any other town expenses. (1 R.S., 396, § 37.) A disregard of the law by the board of supervisors, and a direction by them, in violation of law, in the tax warrant, to pay the moneys to the supervisor did not abrogate or change the law, or in any way extend or enlarge the powers, duties or responsibilities of the supervisor. The collector would have been authorized to, and should have disregarded the misdirection of the warrant; and as the law is superior to the warrant, and the authority of the legislature paramount to that of the board of supervisors, the overseers of the poor and the commissioners of highways were respectively entitled to demand and receive from the collector the sums collected for their several departments, and to be disbursed by them. The board might, with the same propriety and color of authority, have directed the portion of the State tax collected in the town to be paid to the supervisor instead of the county treasurer; or the moneys collected for the general expenses of the town to be paid to the commissioners of common schools instead of the supervisor.
The principal in the bond received, officially and as supervisor, precisely what the law authorized him to receive, and no more. The appellant, in becoming surety upon the official bond of the supervisor, must be supposed to have known the law and the limit and extent of the liability which was assumed. He undertook for the accounting for and paying over of the moneys which his principal was authorized to receive in his official capacity, and of which he was the disbursing agent for the town, and not for that of which he *Page 426 
might become the voluntary custodian for others, or which might be ordered to be paid to him without authority of law. The condition of the bond must be construed, and the liability of the sureties limited in reference to the statutes making the supervisor a custodian of public moneys. These statutes make a part of the contract of the surety. When he undertook that his principal should account for and pay over all moneys that should come to his hands as supervisor, the intendment is that such moneys as should, pursuant to law, be received by him in his official capacity and in virtue of his office, were referred to, and not such as he might receive by color of office, or because he was supervisor, but without right, and of which some other official was the legal recipient and disbursing agent, having the right to receive them directly from the collector. The principal of the appellant was an intruder in respect to the moneys collected for the support of the poor and of the roads and bridges, and acted, in taking them into his hands, officiously and not officially.
Liabilities of sureties are strictissimi juris, and cannot be extended by construction or enlarged by the acts of others. (McCluskey v. Cromwell, 1 Ker., 593; Supervisors ofRensselaer County v. Bates, 17 N.Y., 242.) The surety might well undertake for the proper disbursement by the supervisor of the moneys collected for the general expenses of the town, but not be willing to assume an unlimited liability for moneys legally payable to the other officials of the town, and which could only come to the hands of the supervisor without authority of law, and with the keeping and disbursement of which he had no official connection. The voluntary assumption of new duties and additional responsibilities by the principal, with the assent and through the action of the board of supervisors, essentially changed the risk and contract of the sureties from that contemplated by law, and by them when they became sureties, if they are to be charged for the non-performance of those duties. This can not be done without the assent of the sureties. (Brown
v. Macdonald, 3 Hof. L. Cases, 226.) Had the law been changed after *Page 427 
the giving of the bond, and the road, school and poor moneys directed to be paid to the supervisor, the question then would have been whether this enlargement of the responsibilities of the principal did not discharge the sureties, which may be regarded as an open question with us. (Pybus v. Gibb, 6 El. Bl., 902; People v. Biles, 36 N.Y., 459.) But that the liability of the sureties upon the bond in suit is and should be restricted to the moneys which by law the supervisor was authorized and bound to receive and disburse pursuant to law, cannot be doubted. Contracts of sureties are always construed strictly. (U.S. v.Kirkpatrick, 9 Wheaton, 720.) A surety is only bound to the extent, in the manner and under the circumstances pointed out in his obligation. (Per STORY, J., Miller v. Stewart, 9 Wheaton, 680.) The cases cited by the learned counsel for the respondents, in which sureties of executive officers have been held liable for the tortious acts of their principals while in the performance of official duty, are not applicable to the case in hand. The only question here is, what moneys, within the true meaning of the bond, have come to the hands of the principal, as supervisor? We think that in respect to the liability of the sureties only such are within the terms as the law has made payable to him, and made it his duty to receive.
The judgment must be reversed and a new trial granted, costs to abide the event.
All concur; MILLER, J., not sitting.
Judgment reversed.