THE BOARD OF EDUCATION OF FAIRPORT UNION FREE SCHOOL, etc., Respondent, *v.* WILLIAM T. FONDA et al., Appellants. ·

Where the board of education of a union free school, incorporated under the common school act of 1864 (chap. 565, Laws of 1864), by mistake and in good faith instead of taking a bond from one ·elected as its treasurer, as required by said act (§ 7), accepted a writing in the form of a bond, but not under seal, *held*, the same was valid and enforceable against the sureties thereto.

The fact that by the said act (§ 7) the giving of a bond is made a prerequisite to the entering upon the duties of the office, and that the office is declared vacant in case of failure to give the bond, does not invalidate an instrument so given, where the person elected as treasurer enters upon and discharges the duties of the office; as he comes into the office by color of title he is an officer *de facto*, and his acts are valid when they concern the public or the rights of third ̈persons having an interest therein.

*Rounds* v. *Mansfred* (38 Me., 585), distinguished and questioned.

*Hardmann* v. *Bowen* (39 N. Y , 196), distinguished.

Where an officer elected for a second term has in his hands at the beginning of, and after he gives a bond for that term public moneys which came into his hands during his first term, his failure thereafter to pay and account therefor is a breach of the condition of the bond and the sureties are liable.

Plaintiff, under legislative authority (chap 24, Laws of 1872), had collected money by tax to pay bonds issued by it for the purpose of building a school-house, which moneys were paid over to defendant W., its treasurer. *Held*, that the building of a school-house and the raising of money to pay therefor were "school purposes" within the meaning of said act of 1864; that the money came properly to the hands of W. as treasurer; and that for a failure upon his part to pay over and account for the same the sureties upon his official undertaking were liable.

Also *held,* that the fact that the authority to raise the money was given by a private act did not affect such liability.

For a portion of the money which so came into the hands of W. he gave a sight draft on a bank in New York, payable to B., one of plaintiff's trustees, who indorsed and delivered it to S., another trustee, who indorsed it over to a holder of one of plaintiff's bonds; the bond was marked "paid" and delivered up to plaintiff; payment of the draft was refused, plaintiff thereupon returned the bond and the word "paid" was erased. *Held,* that, in the absence of an agreement or express understanding, the receipt of the draft was not a payment of the bond; that the taking of the draft as a means of getting payment of the debt and the unavailing use of it for that purpose without *laches* worked no suspension of remedy against W., and did not discharge his sureties.

(Argued April 24, 1879; decided May 20, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, a union free school incorporated under the common school act of 1864, upon an instrument in writing executed by defendant Wolcott as principal, and by the other defendants as sureties, to recover for an alleged failure upon the part of said Wolcott to account for and pay over moneys which came into his hands as treasurer of the plaintiff.

The referee found substantially the following facts:

The defendant Wolcott was duly elected treasurer of plaintiff on the 19th day of October, 1875, and on the third day of November of the same year, he, as principal, and the defendants Fonda and Ellis, as sureties, executed an instrument in writing in the form of a bond, in the penalty of $600, but without seal, to the plaintiff, the condition of which is as follows : " Whereas, the above bounden Henry E. Wolcott has been chosen treasurer of the above mentioned school district No. 9, in the town of Perrinton, county of Monroe, in conformity to the statute relating to free schools ; now, therefore, the condition of this obligation is such that if the said Henry E. Wolcott shall well and properly account

for all moneys received by him as such treasurer, and shall in all respects duly and faithfully execute all the duties of this office of treasurer of such district, then this obligation shall be void, otherwise of full force and effect." This paper was, on the 12th day of November, 1875, duly approved and filed according to law. Said Wolcott, at the time of his election as treasurer and of executing said instrument, and for some years previous thereto, was the sole proprietor of a private unincorporated bank, established in said village of Fairport. Defendant, Fonda, was teller in said bank, with full authority from Wolcott to receive and pay out money upon drafts and checks, and transact all business pertaining to the bank. Wolcott had been and was treasurer of said district when he was elected on the nineteenth of October for a second term as above mentioned. On the 1st day of November, 1875, a deposit of school money of said district was made with Wolcott, as treasurer, of thirty-six dollars, which remained in his hands on and subsequent to the third of November. Other deposits of the moneys of the plaintiff were made with Wolcott as treasurer from the seventeenth of November to the fifteenth of July. Part of this money was the avails of a tax for carrying on the school in said district; another part the avails of a tax to pay money borrowed by the plaintiff for the purpose of erecting buildings for the school in said district; another part was received from the literature fund to the amount of $ ———. By the direction of Wolcott an account was opened on the books of his bank by which he, as treasurer, was credited with the money so deposited, and charged with the sums paid out on the orders of the plaintiff. Plaintiff, in pursuance of the authority given by chapter 24 of the Laws of 1872, borrowed money for the purpose of building a school-house in said district, and among others borrowed of the Safe Deposit Company, a corporation doing business in the city of Rochester, $4,000 on the 15th day of July, 1872, for which the plaintiff gave its bond in pursuance of the provisions of said act. Wolcott, being insolvent,

absconded, having in his hands as treasurer "unaccounted for of the money of the plaintiff deposited as above mentioned, including the thirty-six dollars deposited the 11th of November, 1875, and the amount of $100 of the literature fund, $3,950.70." The balance represented, and was made up of taxes collected under said act. On the fourteenth of July the clerk of the plaintiff, by its direction, called at Wolcott's bank for money, with a view to the payment of said bond, which matured on the following day. Fonda gave a check for $1,000, and a draft as follows:

"BANK OF FAIRPORT,  
"FAIRPORT, NEW YORK, *July* 15, 1876.  
"$2,850.18.

"Pay to the order of H. A. Barston, Esq., $2,850.18. To the Importers and Traders' National Bank, New York.

"W. T. FONDA, *Teller.*"

Barston, who was one of the trustees of the plaintiff, indorsed the check as follows: "Pay W. S. Storms or order," to enable Storms, who was also a trustee, to negotiate the draft. The $1,000 check was paid on presentation, the money thus obtained and other money borrowed by the plaintiff was taken to the office of the deposit company and there paid to the clerk in attendance, and the draft on New York indorsed by Storms and delivered to the clerk, who marked the bond of the plaintiff "paid," and delivered the same to Storms. The cash and draft amounted to the sum due on the bond, principal and interest. The draft was indorsed by the deposit company, forwarded to New York for collection, duly presented to the drawer, and protested for non-payment. Due notice of protest was served on the deposit company, and by the latter on Barston and Storms, the indorsers. The plaintiff and Fonda were apprised of the protest on the seventeenth or eighteenth of July; the bank was closed on the seventeenth and has not since been opened. The referee found "that the plaintiff, the indorsers of the draft, including the deposit company, all supposed

and believed until the draft was protested, that it would be paid on presentation to the drawer."

The plaintiff on demand returned the bond to the deposit company, who indorsed on it the cash paid, and marked as erroneous the word "paid" written thereon. The draft remained in possession of the deposit company until the trial of this cause, when it was transferred to the plaintiff, by whom it was produced on the trial, with the offer to cancel the same, which offer was declined by the defendants, the sureties of Wolcott.

Further facts appear in the opinion.

*J. C. Cochrane*, for appellants. The treasurer could not enter upon the duties of his office until the bond required by the statute was given. (Laws 1864, chap. 555, § 7; *Rounds* v. *Mansfred*, 38 Me., 585; Laws 1874, chap. 419; *People ex rel. Andrews*, 5 Hun, 120; *People ex rel. Van Nostrand*, 46 N. Y., 375; *Hardmann* v. *Bowen*, 39 id., 196; 1 Bouv. L. Dict., 186 ; *Colt* v. *Miliken*, 1 Den., 386 ; Potter's Dwarris, 127, 132; *People ex rel. Bowen* v. *Jones*, 63 N. Y., 309; *Kingston Mut. Ins. Co.* v. *Clark*, 33 Barb., 196; *People* v. *Pennock*, 60 N. Y.; 421.) When this action was commenced there was no cause of action in plaintiff; the draft having been transferred to the safe company, it carried with it the original consideration. (*Battle* v. *Coit*, 26 N. Y.; 406; 19 Barb., 68; *Peters* v. *Sanford*, 1 Den., 224; *Oneida Bank* v. *Ontario Bank*, 21 N. Y., 490, 497, 498; *Gerwig* v. *Sitterly*, 56 id., 214.)

*W. F. Cogswell*, for respondent. The instrument executed by defendants, although not a technical bond, was valid as a common law obligation. Its consideration was its retention by Wolcott of his office, and the reception of the money in question. (15 Peters' R., 290.) The giving up of the draft to be canceled on the trial was all defendants could ask. (*Burdick* v. *Green*, 15 J. R., 247; *Hughes* v. *Wheeler*, 8 Cow., 58; *Holmes* v. *De Camp*, 1 J. R., 35; 2 Pars., 150,

and note; *Haderin* v. *Mendizhble*, 10 J. B. Moore, 417.) Money raised to pay for the school-house was as much money for school purposes as money to pay the schoolmaster. (Laws 1864, chap. 555; School Code, 1274, title 9, § 10; id., 1270, § 22, Laws 1872, chap. 24.) The action of the Safe Deposit Company did not affect the question between these parties. (*Noel* v. *Merry*, 3 Kern., 168.)

FOLGER, J. The writing upon which this action is brought is not a bond. It is in the fashion of one. It has a penalty and condition. It recites that it is under the hands and seals of the obligors. Yet there are no seals to it. There are places for them; and the letters L. S. to each name, which mark those places but do nothing more. It is not an instrument in strict compliance with the statute: (Act of 1864, chap. 565, p. 1273, § 7.) When the Legislature said a bond, it meant a bond; which is a form of taking security well known to the law; from its characteristics having some sanctions not shared in by all written obligations, and thereby affording a more complete and binding, and higher form of security. The members of the corporate body which is the plaintiff here are not to be excused of carelessness. Still, this is not to say that the writing is invalid and not enforceable. A writing is good at common law, binding upon the makers, where it is neither *malum in se* nor *malum prohibitum*, is founded on a good consideration, is given and taken by competent parties, and is willingly made. Though the Legislature spoke of a bond, it was as a means to the lawful end of having security for the school moneys. Therefore, whatever reaches the end is not against natural or moral law, or public policy. Hence this writing is not *malum in se*. Though the statute points out a bond as the form of security, it points too to the duty of giving and taking security. There are not negative words in it. It does not forbid this writing. Neither expressly nor by implication does it make it void. Though it was the duty of the plaintiff to follow the statute law and take a bond,

and nothing but a bond ; yet it is not against the policy of the statute that security should be taken in other form.    To hold otherwise would oft defeat the object of the statutory requirement.    It need not be held so, unless the statute forbids such an act to be done.    Thus it is not *malum prohibitum.*    It had a good consideration.    Wolcott had been duly appointed to office.    An obligation in writing, with sureties, that he would do well his part in office, was asked from him ; as it lawfully might and must be, without which he could not enjoy the office.    The giving of the writing for the sake of getting the office was giving it for a good consideration.    It was willingly made by him and by the defendants ; willingly delivered to the plaintiff, the party for whose benefit it was meant.    The defendants were competent to make and deliver it.    The plaintiff was competent to take it.    They were enjoined by the statute to take security.    By accident or mistake, wholly without ill design, they have taken a writing in the form of a bond, but have not put seals to it.    The supreme political power, acting through its officers, is competent to take as security for official good conduct an obligation in writing not squaring with the literal requirement of the authorizing statute :   (*The United States* v. *Linn*, 15 Peters, 290;   *The Same* v. *Hodson*, 10 Wall., 395.)    The executive officer of a county has been held to be so ;   (*Morse* v. *Hodsden*, 5 Mass., 318); and a judicial officer of a county ; (*Thomas* v. *White*, 12 id., 369); and the directors of a bank (*Bank of Brighton* v. *Smith*, 5 Allen, 415).    We see no reason why the plaintiff is not competent to take such a writing, when it is done in good faith and in aid of the policy of the statute creating it, and the plaintiff is the body empowered and directed to take security.

It is said, however, that the giving of a bond was a prerequisite to the holding of the office by Wolcott ; that he could not enter upon the duties of the office until the bond was given ; and that if he failed to give the bond within ten days, the office became vacant.    This provision, in substance, is not uncommon.    Yet, when persons come into office by

color of title, they are officers *de facto.* Their acts are valid when they concern the public or the rights of third persons who have an interest in the act done. The limitation to the rule is as to such acts as are arbitrary or voluntary, and do not affect public utility : (*The People* v. *Collins,* 7 J. R., 549.) In the case cited, the provision of statute was ; that if the officers should refuse to serve, others might be chosen or appointed ; that they should, before they entered on the office, and within fifteen days after election or appointment, take the oath of office ; and that neglect to take the oath should be deemed a refusal to serve. This is a provision not exact in tenor, but like in effect, with that before us. Yet it was held that the acts of those coming in *colore officii* were good, though they had not done that which the statute commanded, and with a penalty ; the same as that here, the loss of the office. The reasoning upon this subject is well done in 5 Allen (*supra*) ; and to that we refer, if more elaborate statement is looked for. The case in 38 Maine, 586, cited for defendants, is to be distinguished from that in hand. There, it did not appear that there was any attempt to observe the statute, before doing the act ; besides it seems to conflict with our own adjudication ; (7 J. R., 549 [*supra*]) ; and later decisions in that State do not seem adverse to our views : (*Boothbay* v. *Giles,* 68 Maine, 160.) In the case cited from 39 N. Y., 196, there was no color of right, until the act should be done which was omitted.

These considerations seem to dispose of the first and second points made for the defendants. Most of the money which Wolcott ought to have paid came from the tax for a new school-house ; not all of it. He was district treasurer the year before. At the close of it, there were thirty-six dollars of district money which he had not paid out. This sum was put into the judgment against the defendants. It is now claimed that they were not liable for it, inasmuch as it came to his care before they became his sureties. Their undertaking is dated the 3d of November, 1875, and is found to have been executed on that day, by which it is meant that it was then

signed and sealed. It was taken by the plaintiff the twelfth of that month. The fifth finding is that this sum was had by Wolcott on the first day of that month, before the defendants became sureties, and remained in his hands on and after the third. The seventh finding is that it was the eleventh of that month. The testimony is that it was the first. The points for plaintiff concede that it had come to Wolcott's hands at the close of his former term as treasurer. It is to be noticed that the finding is, that that sum remained in Wolcott's hands on and after the third of the month. The language of this finding is that appearing in the adjudged cases. It is not claimed by the defendants that Wolcott had appropriated it to his own use, and was actually a defaulter thereof to the plaintiff before they made their undertaking. It does not appear but that up to the time of the last call for the money, he was able to and did meet his official obligations at once. It is probable that the very moneys which made up this sum were not kept apart by him, but mingled with others, from the mass of which he made payments to the plaintiff when asked. When it was called for at last, he was not able to pay it. The question is up then, whether sureties for the second term of an official having the care of public moneys, are liable for what he took in during his first term, remaining in his hands until after they have given their bond, and which he failed to pay during his second term. We find a rule laid down thus : For any sum paid to a principal before the execution of a bond for official good conduct there is but one ground on which the sureties can be held to answer, and that is, that the principal still held the money in bank or otherwise. If still in his hands, he was up to that time bailee to the public ; but if he had become a debtor or defaulter thereto, his offence was already consummated. (*Farrar* v. *United States*, 5 Peters, 372.) It was said there, that if it was meant to cover past deeds, the bond should have been made retrospective ; and that the sureties had not undertaken against his past misconduct. The bond was there, as the undertaking is here, prospective in its language.

The other face of this rule is shown in *United States* v. *Boyd* (15 Peters, 187), thus: That if the sum, though taken by the principal before the giving of the bond, was held by him after his appointment in trust for the public, and so continued to be held at and after the date of the bond, then the failure to pay and account therefor, after the giving of the bond, was a breach of the condition thereof. (See, also, *United States* v. *Eckford's Ex'rs*, 1 How. [U. S.], 250–261.) The finding, and, so far as the testimony goes, the proof, show that Wolcott held the sum after his second appointment and after the defendants gave their undertaking. They did not offer to prove a use of it by him before that for his own purposes, and a defalcation by him therefor. We therefore say that the point is not good.

As Wolcott was treasurer, he was the fit and only keeper of the moneys raised for school purposes. (Laws of 1864, chap. 555, tit. 9, p. 1273, § 7.) As we have said, most of the money of the plaintiff which he had was raised by tax to pay off a bond made by the plaintiff under chapter 24 of the Laws of 1872. That act gave the plaintiff power to put up a building for "educational purposes," and to buy a fit site and grounds therefor, and to raise money therefor by bonds. Power was also given to raise by tax money to pay the bonds. These powers had been used before the naming of Wolcott as treasurer, so far as to put out the bonds and receive the price thereof. The power to tax for money to take them up was used in 1875, before his last appointment as treasurer, and the most of the money in his hands came from that levy, but was received by him in his term of office covered by the suretyship of the defendants. It is now urged that the act of 1872 did not add to the duties of the treasurer of the plaintiff. It did not; that is, it did not put upon that officer another kind of duty than those he was under before. It made his duty of keeping the money for school purposes greater, as it for a time enlarged the sum to be kept therefor. The act of 1872 does not in terms say that the money raised by tax shall be paid to the

treasurer. It was raised to be paid in the end to the bond-holder. Still, it is plain that money to be raised by tax in a rural school district must be got in driblets. Meanwhile it cannot be paid to the bondholder by piece-meal. Until there is got together enough to pay a bond, the money, as it is taken from the taxpayer, must be kept somewhere by somebody ; and who but the treasurer is that one ? He is the treasurer, the official man who is to have charge of the moneys raised within the district for school purposes : (Act of 1864, p. 1273, § 7.) Buying a site for, and building a school house, was a school purpose, within the meaning of the act and section just cited ; though the exact meaning of the word " pur-pose " may not take in that notion. A purpose is that which one sets before himself to strive for and reach. It is the end rather than the means thereto. So the purpose of a school, the end of setting it up, is strictly the mental train-ing and finish of the scholars ; and the school-house is but a means to that end. But the word in the plural, purposes, is *sometimes of the same sense as the word uses.* " The meaning of words depends upon the subject," per Lord MANSFIELD : (*Lyers* v. *Bridge*, Doug., 530.) This is much so in this statute of 1864. This word is sprinkled over it, and mostly in this sense. Section 12 of title 7, page 1242 says that certain persons owning or hiring property subject to taxation for school purposes may vote at a school meet-ing. Plainly the end of this 'section is that only the tax-payer, near or far off, may be the tax-voter. Now what are among the things which may be voted upon ? To pick out a site for a school-house. And what among the taxes ? To buy such site, and build a school-house and keep it in repair : (§ 15, p. 1243.) Clearly then the building of a school-house is among the school purposes looked forward to by this act ; and money raised therefor, in any lawful way, is raised for one of those school purposes, and the treasurer of the district is the treasurer thereof. It is said that an official undertak-ing is to be construed, and the liability of sureties found out, by going to the statutes making him the keeper of the public

moneys; and so it is laid down : (*The People* v. *Pennock*, 60 N. Y., 421.) Then it is urged that the act of 1872 (*supra*), is a private act, and that the defendants may not be taken to have bargained in reference to that of which they knew not nor heard, until this trial. If the act of 1872 is a private act, that does not make it any less the basis of liability. It put a greater duty upon the treasurer. The defendants, when they became his sureties, were so for the doing by him of all that the law cast upon him. In the case just above cited the money was in the hands of the official principal, not only without statute, but against statute, which said that it should have gone to other officers. It is what the law asks of the official principal, that the sureties for him undertake that he will do, whether that law speaks in a public or a private statute, when those statutes go before the making of their obligation.

It is further said that the plaintiff, the corporate body, had no power, apart from that given by the act of 1872, to buy a site and put up a school-house. Let it be granted. The plaintiff, as a corporate body, after all is but the district. It is the school district, acting as a political being through its agent, the board of education. The powers given to the board by statute are given for the good (or ill, as it may turn out) of the mass of people who make up the union school district. The action of the plaintiff, as such body corporate, was the action of the district, and bound all having stake in the matter, be they simple ones of the whole, or officers, or sureties for officers.

It is urged that the passing of the draft to the Safe Deposit Company, in payment of the bond of the plaintiff, was a suspension of any other remedy against Wolcott, and thereby discharged the sureties. There is wrapped up in this proposition a matter of fact. Was the draft passed to the company in payment of the bond ? The learned referee has not so found. He states in his report that it was not received in payment, but as a means of obtaining it. Though this is mingled with the conclusions of law, it might have been

uttered as a finding of fact and been upheld by the testimony. It is a clear inference from what took place between the plaintiff's agents and the agent of Wolcott, that the draft was looked upon as good to be paid, yet that it was not their purpose that it should be taken in the stead of money, but as the means of getting the money. In the absence of agreement or express understanding that such an instrument shall be taken in satisfaction, it does not in law have that effect. One simple executory contract taken for another, for the same consideration, from the same party, does not put out the latter : (*Gregory* v. *Thomas*, 20 Wend., 17, and cases there cited.) Paper is no payment when there is a precedent debt : (*Ward* v. *Evans*, 2 Ld. Raym., 928.) Taking it as now yielded, that the plaintiff had a contract from Wolcott, or a prior debt against him, the giving of this draft did not supplant it. Had there been funds to meet it in the hands of the drawee, it would have been held an agreement for delay until day of payment ; and money had upon it, or *laches* by the plaintiff, would have worked to the relief of the defendants. As there were not enough funds there to meet it, and acceptance and payment were refused, it did not so work, so far as we have now got. When the draft reached the Safe Deposit Company it had been added to. Barstow, the payee named in it, had put his name on the back, indorsing it to Storms ; and he had done the same, indorsing it to the company. Calling the draft, as thus added to, the paper of other parties, yet as the debt of the plaintiff was precedent, there was need of express agreement to make the taking of it payment of the plaintiff's bond : (*Porter* v. *Talcott*, 1 Cow., 359; *Monroe* v. *Hoff*, 5 Denio, 362; *Hill* v. *Beebe*, 3 Kern., 356.) No express agreement to that end is proven ; and all the inferences from the facts shown are against the making of one. The taking of the draft as a means of getting payment of the debt, and the unavailing use of it for that purpose without *laches* worked no suspension of remedy against Wolcott that will discharge the defendants, if they are his sureties. Besides, the answer

does not set up that defense.   And again, one of the defend-
ants was consenting to and assisting in the use of the draft.
This point arises either on a motion for a nonsuit made by
the defendants jointly or an exception in behalf of the defend-
ants jointly to finding and conclusion.   It is not taken for
the one not knowing to the giving of the draft, nor is any
motion or request made for him, singly.   For these reasons
we hold that this point is not tenable.   And this also meets
the contention, that the draft having been indorsed to the
company, there went with it a right of action upon the
original consideration.   When the draft came back unpaid,
the plaintiff gave back the bond to the company, and the
word "*paid*" written upon it was marked out, and only the
amount in fact paid was put upon it.   The plaintiff then had
the ownership of the draft and was entitled to the possession
of it.   The company did not own it, and could not have kept
it from the plaintiff.   The possession of it by the former was
but the custody of it for the latter.   The plaintiff had all
rights of action growing out of the transaction between it
and Wolcott.

This is approved as declaring the law of this case, and the
judgment appealed from will be affirmed.

All concur.

Judgment affirmed.