Daniels, J.
The verdict was rendered for the value of a thousand and ten chairs placed in the Cosmopolitan Theatre, at the corner of Broadway and Forty-first street, in the city of New York. They were placed in the theatre under an agreement made with Sylvester M. Hickey, who was its lessee from the plaintiff, under a lease made on the 15th of December, 1882, for the period of six years seven months and seventeen days, from the 13th of February, 1883.
By this agreement Cornelius B. Demarest undertook to provide and place the chairs in the theatre for which Hickev, the lessee, was to pay one-third in cash, and the balance in three, four, five and six months, for which notes were to be given and secured by a chattel mortgage on the chairs. The chairs were substantially placed in the theatre by the 12th of February, 1883, although some work was done there to complete them afterwards. And on the 24th of that month the tenant gave his mortgage on the chairs to Demarest the manufacturer, to secure the payment of the unpaid purchase price. And that he could very well do as the chairs Were fastened to the floor only by iron screws, about two and a half inches in length, which did not deprive them between these parties, of their character as personal property. Murdock v. Gifford, 18 N. Y., 28; Tifft v. Horton, 53 N. Y., 377.
The debt secured by this mortgage was not paid and the mortgagee assigned it to Robert W. Reid, one of the defendants, and he, together with the other defendant, removed the chairs from the theatre under the mortgage. The plaintiff denied their right to make this removal under the lease given to Hickey, the mortgagor. The clause in the lease upon which they placed their denial, and which was held sufficient at the trial to entitle them to maintain this action, declared that any and all additions, alterations and improvements that shall or may theretofore have been made to the said premises, or any part thereof, shall be and remain a part thereof, and shall and will be surrendered and left therein at the expiration, or sooner determination of the term hereby granted, without any claim for compensation on account thereof, on the part of the said party hereto of the second part. What this was designed *344 to include as additions, alterations and improvements, was-not clearly expressed in the lease, but it was probably intended to refor to no more than what had been provided for in its first sub-division, wherein the assignee agreed to cause such alterations, additions and improvements to be-made to the premises as should convert them into a theatre,, with a suitable gallery or galleries, with a seating capacity of at least 2,200 persons in the auditorium thereof.
This related to alterations and changes in the building itself, and the size and extent of the auditorium to be affected by such changes. It was not declared that the furniture placed in the auditorium should become the property of the lessor, but that these alterations, additions and improvements requisite to secure' this object should remain and become a part of the premises. It was the seating-capacity which was provided for as indicating the extent of the enlargement to be made, and, not the seats themselves,, which were the object of these provisions contained in the-lease. Such additions and improvements could very well be provided for as permanent additions and changes in the-leasehold premises themselves, while such articles as chairs for the convenient enjoyment of the premises after they had been altered and changed, would not be included and made a part of the landlord’s property without a more clear expression of that design than was inserted in this lease.
But if this lease is to be construed as including furniture added in this manner to the building, the right of the plaintiff to the chairs was inferior to that of the manufacturer, and his assignee under the mortgage. It was the agreement of the parties to the transaction that two-thirds of the purchase price of the chairs should be secured by a chattel mortgage, to be given upon them by the purchaser. That was not only an implied,' but it was in the nature of an express condition of the sale. The purchaser was to receive and acquire the property in the chairs in no other-manner, and the manufacturer and seller had the right to insist upon the performance of this condition before the tenant, or the landlord, would be entitled to retain the chairs in the the theatre. And that the manufacturer did not at any time dispense with the performance of this condition was quite clearly proved upon the trial. There was no intent to waive its observance, neither was any claim at-any time made on the part of the tenant that he could re tain the 'property, without securing this part of the purchase price by the execution and delivery of the mortgage. And as soon as that was prepared, and he could be found for the purpose, he executed the mortgage, and it was filed in the registrar’s office, as that has been required to be-done, on the 23d of February, 1883. And that mortgage,. *345 as it was given in part performance of the agreement for the purchase of the chairs and under which alone they were delivered, became a valid security upon the property not only against the purchaser, but also against the plaintiff itself. Husted v. Ingraham, 75 N. Y., 251.
The facts of that case in their essential effect were very much like those in the present action, for there the property was delivered under an agreement that a mortgage should be executed to secure its price, but it was not in fact given until about one month after the property had passed into the possession of the mortgagors. But in reference to the effect of the mortgage, it was said by the court: “ That the referee went too far in holding that the plaintiffs had no lien upon the property. The carpets having been delivered under an agreement that the price should be secured by a mortgage thereon, that agreement could have been specifically enforced in equity, and constituted an equitable Hen upon the property as against J. E. Miller & Co. and all persons claiming through, or under them’ except bona fide purchasers, having no notice of the lien.” Id., 257.
This rule fully sustained the mortgage given upon the chairs, and it is not affected by anything which was said in Comer v. Cunningham (77 N. Y., 361), for there the title of a purchaser for value had intervened, which was held to be superior to the rights of the vendor of the property. That case has no effect or control over this transaction, neither have the others which have been cited in support of the judgment, for the plaintiff at no time became a purchaser of these chairs for value.
It advanced nothing m reliance upon the tenant’s title, but derived its right, whatever it was, wholly under the provisions of the lease, of which the vendor had no notice up to the time of the execution and delivery of the mortgage. This was an agreement wholly between the purchaser and the plaintiff, antecedently made, having no force as a contract against the manufacturer and vendor of the chairs, as long as they were placed in the theatre under the specific agreement proved in the case and the performance of its terms had in no manner been waived or dispensed with by him.
The judgment therefore should be reversed and a new trial ordered, with costs to abide the event.
Van Brunt, Oh. J., concurs.