the defendant for injuries received by reason of his failure to supply her room with a rope. The plaintiff had occupied a room in this building for 10 months, and for 6 months had occupied the room in which she slept on the night of the fire, paying a weekly rent therefor, and eating when and where she chose. She knew that there was no rope in the room, but made no complaint. There were outside iron fire escapes, and the platform to one of them was directly under one of the windows opening out of the plaintiff's room, which window she kept nailed down to prevent unbidden persons from entering her room by the escape. The man who occupied the room with the plaintiff on the night of the fire escaped from the burning building by means of this fire escape, which the plaintiff, through fear or confusion, neglected to avail herself of, and jumped to the ground, receiving injuries, for which she seeks to recover damages. The plaintiff testified that she was 27 years of age, and for 10 years had been, by occupation, a professional bicycle rider, riding in races, and thereby, before her injuries, making a comfortable living, but by her injuries her health and strength have been so impaired that she is unable to make a living as before. In Huda v. Glucose Co., 154 N. Y. 474, 48 N. E. 897, it is held that a workman employed in a factory, which was within the statute requiring the owner to maintain fire escapes easily accessible from the workmen's room (Laws 1892, c. 673, § 6), might, by acquiescence, waive its provisions, and assume the risk incident to the absence of such escapes. In Willy v. Mulledy, 78 N. Y. 310, 315, the same rule is recognized. Under the authority of these cases, I think the learned trial judge correctly held that, under the evidence in this case, the plaintiff was not entitled to recover.

The order should be affirmed, with costs. All concur, except WARD, J., not voting.

---

### LYMAN v. SCHENCK et al.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. INTOXICATING LIQUORS—SALOON KEEPER'S BOND—LIABILITY OF SURETY.
Liquor Tax Law, § 18 (Laws 1896, c. 112), requires applicants for liquor tax certificates to execute a bond conditioned that the applicant will not violate the liquor tax law, and that, if a certificate be issued, and he violates said law, the penalty of the bond shall become due, and the principal and surety shall be jointly and severally liable. Section 34 provides that violations of said act shall be punishable by fine or imprisonment or both, and section 36 provides that on conviction for a violation of the act judgment shall be entered against accused for the amount of fine and costs imposed, and, if it be not paid, execution shall issue thereon; and, if the judgment debtor shall have given the bond provided for in section 18, the county treasurer or special deputy commissioner may proceed to collect the judgment from the sureties. Held, that in case of a violation of the law by the principal the surety is liable for the penalty of the bond, and not merely for the amount of fine and costs imposed on the principal on conviction for such violation.

2. SAME—ACTION TO RECOVER PENALTY.
An action against such surety to recover the penalty of the bond may be brought before the institution of criminal proceedings against the principal.

3. SAME—RIGHT TO SUE—STATE COMMISSIONER OF EXCISE.

Laws 1897, c. 312, amending Laws 1896, c. 112, § 18 (Liquor Tax Law), by providing that actions for a breach of the bond given by applicants for liquor tax certificates may be maintained by the state commissioner of excise in his name, relates to the method of procedure only, and does not impair the obligation of the bond, and an action to recover the penalty of a bond for a violation of the act prior to the adoption of said amendment is properly brought in the name of the state commissioner of excise.

Appeal from special term, Monroe county.

Action by Henry H. Lyman as state commissioner of excise against Andrew G. Schenck and others. From a judgment for plaintiff on a demurrer to the complaint, the defendant the Rochester Title Insurance Company appeals. Affirmed.

The action was begun November 5, 1897, to recover the penalty of a bond executed by the defendants Schenck, as principals, and the defendant insurance company, as surety. In the complaint it is alleged, in substance, that the plaintiff is the state commissioner of excise of the state of New York; that the defendants Schenck made application for a liquor tax certificate, pursuant to chapter 112 of the Laws of 1896; that pursuant to the provisions of said law the defendants Schenck, as principals, and the defendant insurance company, as surety, made and executed their bond in the form prescribed by said act, by which they jointly and severally undertook that, if a liquor tax certificate should be given to the defendants Schenck, the obligors upon said bond would pay to the people of the state of New York the sum of $600 in case said defendants Schenck violated any of the provisions of the liquor tax law. It is further alleged that at different times during the year 1896 the defendants Schenck violated the provisions of the said liquor tax law, in that they sold liquor on Sunday. Judgment is demanded for the amount of the penalty of said bond, to wit, $600. The defendants Schenck did not appear or answer. The defendant insurance company duly appeared and demurred to the complaint, upon the grounds: First, that it does not state facts sufficient to constitute a cause of action; and, second, upon the ground that the plaintiff has no legal capacity to sue, in that the law gives him no authority to sue on the bond set forth in the complaint. The bond is annexed to, and made a part of, the complaint, the conditions of which are as follows: "Now, the conditions of the above obligation are such that if the said liquor tax certificate applied for is given unto the said Andrew G. Schenck and Andrew P. Schenck, the said Andrew G. Schenck and Andrew P. Schenck will not, while the business for which such tax certificate is given shall be carried on, suffer or permit any gambling to be done in the place designated by the tax certificate in which the traffic in liquors is to be carried on, or in any yard, booth, or garden appertaining thereto or connected therewith, or suffer or permit said premises to become disorderly, and will not violate any of the provisions of the liquor tax law, any act amendatory thereof or supplementary thereto, then this obligation shall be void; otherwise it is to be and remain in full force and effect."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and McLENNAN, JJ.

George F. Yeoman, for appellant.
Edwin Hicks, for respondent.

McLENNAN, J. The bond in question was given, and all the alleged breaches of its conditions occurred, during the year 1896, and therefore the liability of the appellant must be determined by the bond itself, and by the statute as it existed at that time. It is elementary that, where a bond is given in pursuance of a statute, the provisions of the statute are, in effect, a part of the bond. McCluskey v.

Cromwell, 11 N. Y. 593. People v. Chalmers, 60 N. Y. 154. The statute constitutes a part of the contract of the surety. People v. Pennock, Id. 421, 425. Section 11 of chapter 112 of the Laws of 1896 specifies the amount of tax which must be paid for a liquor tax certificate. The defendants Schenck were lawfully required to pay, and did pay, the sum of $300, and a liquor tax certificate in due form was issued to them. Section 18 of the act provides, in substance, that the applicant for a liquor tax certificate must execute a bond to the people of the state of New York, with sureties, in double the amount of the sum paid for the liquor tax certificate, containing, among others, the provision that, if such certificate is given, he, the applicant, will not violate any of the provisions of the liquor tax law while engaged in the business of trafficking in liquors under such certificate. And the section further provides that the bond so executed must contain, in substance, the agreement that, if a liquor tax certificate is issued to such applicant, and he violates any of the provisions of said liquor tax law, the penalty of such bond shall become due and payable to the people of the state, and that the principals and sureties upon said bond shall be jointly and severally liable for the payment of the same. The bond in this case follows substantially the language of the section. Section 31 of the act provides, among other things, that it shall be unlawful for any person holding a liquor tax certificate of the kind issued to the defendants Schenck to sell liquor on Sunday. It is clear that, if the language of the bond and of section 18 of the act, under which it is given, is only considered, the liability of the defendant insurance company would be established upon proving that the defendants Schenck sold liquor on Sunday, as alleged in the complaint. The contention of the defendant insurance company, stated broadly, is that no liability can exist against it upon the bond which it executed as surety, until the liability of its principals has been established, as provided by section 36 of the liquor tax law. That section provides, in substance, as follows:

"Upon the conviction and sentence of any person for a violation of the provisions of this act, the court imposing the sentence, or the clerk of the court if there be a clerk, shall forthwith make and file in the office of the clerk of the county in which such conviction shall have been had, a certified statement of such conviction and sentence, and the clerk of said county shall immediately thereupon enter in the docket book kept by said clerk for the docketing of judgments in said office, the amount of the penalty or fine and costs imposed, as a judgment against the person or persons * * * so convicted and sentenced, and in favor of the state commissioner of excise. * * * If said judgment shall not be paid within five days after such conviction and sentence, the clerk of said county shall issue an execution against the property of said judgment debtor or debtors against whom such judgment is docketed, to the sheriff of the county, who shall forthwith proceed to collect the amount due on said judgment, together with his legal fees and costs, by levy and sale in the manner now provided by law. * * * In case said judgment debtor or debtors shall have given the bond provided for in section 18 of this act, such county treasurer or special deputy commissioner may proceed to collect the amount of such judgment, together with the costs of collection, from the sureties on such bond by due process of law."

Section 34 of the statute specifies the penalty which may be imposed for a violation of the provisions of the liquor tax law. In substance it provides that any violation of the law by the holder of a liquor tax

certificate shall be a misdemeanor, and that upon conviction therefor he may be punished by fine or imprisonment, or both, in the discretion of the court before whom such conviction is had; and, in addition, in most cases, upon such conviction the liquor tax certificate is required to be canceled by the judgment of the court, and the holder thereof disqualified from again engaging in the business of trafficking in liquors for a period of five years. If the defendants Schenck are guilty of violating one of the provisions of section 31, as alleged in the complaint, to wit, guilty of selling liquor upon Sunday, upon conviction for such offense they may be punished by fine or imprisonment, or both, in the discretion of the court before whom such conviction is had; and the sureties upon the bond, if given, are liable to the amount of the fine imposed. But if this is the entire liability of the obligors upon a bond like the one in question, no force or effect is given to the express agreement contained in the bond. That agreement, which is in accordance with the provisions of section 18, under which it is given, is that, if a person holding a liquor tax certificate violates any of the provisions of the liquor tax law, the obligors upon the bond will forfeit to the people of the state double the amount of the tax paid by the holder of such certificate. The meaning of the agreement cannot be uncertain if words are given the ordinary significance. It is that the obligors upon the bond will pay to the people of the state of New York the sum of $600 in case the principals in the bond violate any of the provisions of the liquor tax law. It is urged that such is not the true meaning of the bond by reason of the provisions of the other sections of the statute, which have been referred to. If such was not the agreement intended, but instead it was intended that the liability of the sureties should be limited to such fine as might be imposed upon the holder of the liquor tax certificate in case of conviction for such violation by him, hardly less appropriate language could have been used by the legislature to express such intention. We think that the scope and purpose of the statute in question is plain; that when the language of the bond, of section 18 under which it is given, and of the other provisions of the act, is all considered, and the words used are given their ordinary meaning, the different provisions of the statute will be found to be in entire harmony, and to express clearly a reasonable purpose and intent on the part of the legislature. By the statute, as a whole, two methods are provided for compelling the observance of the liquor tax law by those engaged in the business of trafficking in liquors: First. In case of any violation of the law by a holder of a liquor tax certificate, who has given a bond as provided for in section 18 of the act, a civil action may be maintained against the obligors upon said bond to recover the penalty of such bond. This may be done before the institution of any criminal proceedings, before such delinquent is convicted, and entirely independent of the provisions of sections 34 or 36 of said act. Or, second, the holder of a liquor tax certificate, who has violated any of the provisions of the liquor tax law, may be proceeded against criminally, and, if found guilty, such person may be punished by fine or imprisonment, or both, in the discretion of the court before whom such conviction is had; and, if a fine is imposed, the surety upon a bond such as the one in question is liable for the amount of

such fine. Such construction gives force and effect to all the provisions of the statute involved in this case. If we have correctly construed the provisions of the statute, and properly interpreted the meaning of the bond in question, it follows that the complaint states a cause of action against the defendants.

We believe that the plaintiff has legal capacity to maintain this action. Section 18 of chapter 112 of the Laws of 1896 did not specify by whom an action might be brought for the enforcement of a bond given pursuant to such section, and there was no provision of the statute which, in express terms, authorized the bringing of such action by the state commissioner of excise. The act was amended by chapter 312 of the Laws of 1897, and there was added to section 18 the following:

"The state commissioner of excise may at any time, without previous prosecution or conviction for violation of any provision of the liquor tax law, or for a breach of any condition of said bond, commence and maintain an action in his name as such commissioner, in any court of record in any county of the state, for the recovery of the penalty for a breach of any condition of any bond, or for any penalty or penalties incurred or imposed for the violation of the liquor tax law, and all moneys recovered in such actions shall be paid over or accounted for in the same manner as are moneys collected under sub-division four of section eleven of this act."

We think that by virtue of such amendment the plaintiff had ample power and authority to maintain this action, notwithstanding the breaches of the bond complained of occurred during the year 1896, and before such amendment to the statute was made. The amendment in no way impairs the obligation of the contract. The rights of the parties have not thereby been changed. The change relates only to the form and mode of procedure, and the legislature had the right to make such change.

In the case In re Davis' Estate, 149 N. Y. 545, 44 N. E. 186, the court say (Martin, J.):

"The method of procedure for the enforcement of a transfer or inheritance tax law was somewhat changed by chapter 713 of the Laws of 1887 and chapter 399 of the Laws of 1892. The procedure is controlled by the statute as it existed at the time this proceeding was instituted. It is a general rule that, in the absence of words of exclusion, a statute which relates to the form of procedure, or the mode of attaining or defending rights, is applicable to proceedings pending or subsequently commenced. Hence the rights of the parties depend upon the statute of 1885, while the method of procedure is governed by that of 1892."

In the case of Lazarus v. Railway Co., 145 N. Y. 585, 40 N. E. 241, the court say (Andrews, C. J.):

"It is well settled that the legislature may change the practice of the court, and that a change will affect pending actions, in the absence of words of exclusion. Southwick v. Southwick, 49 N. Y. 510. The court cannot, under guise of an amendment or repeal of a statute, cut off any substantial right of a party to have his case decided on the merits according to the law of the land; but it would be a very inconvenient rule, tending to great confusion, if the rule of practice existing when an action is commenced attaches itself to a subsequent right in litigation, so that it could not be changed, or that a law changing procedure should be held inapplicable to subsequent proceedings in pending actions, unless in terms made applicable thereto. It is the right of a party to have his case heard and decided in the ordinary course of legal procedure, but he has no right to judgment that the procedure prescribed wher·

the action was commenced should remain unchanged. He prosecutes his action subject to the power of the legislature, in matters of practice, to abrogate rules existing when his action was brought, or make additional rules; and all subsequent proceedings will be governed thereby."

In the case at bar, under a provision of the statute enacted by the legislature, the defendant insurance company obligated itself, upon the happening of certain events, to pay to the people of the state of New York the sum of $600. It is believed that, even if the legislature failed to indicate by the act creating such liability the person or persons or method by which such obligation should be enforced, it was entirely competent for a subsequent legislature to supply such defect, and to designate any person or persons to represent the people as plaintiff in an action brought for the purpose of enforcing such obligation. This, we believe, the legislature of 1897 did by the amendment referred to. By the amendment of 1897 the obligation of the defendant insurance company was not changed or modified in any respect. It simply was made enforceable in an action brought by the state commissioner of excise as plaintiff. The conclusion is reached that the judgment entered upon the decision of the court at special term, overruling the demurrer of the defendant insurance company, should be affirmed, with costs, but with leave to the defendant insurance company to withdraw its demurrer, and serve an answer to the complaint within 20 days from the service of notice of the judgment of this court, upon payment of the costs of the demurrer and of this appeal. Judgment is directed accordingly.

Interlocutory judgment affirmed, with costs, with leave to defendant to withdraw its demurrer and answer upon payment of costs of the demurrer and of this appeal. All concur, except WARD, J., not voting.