## LIABILITY OF SURETIES ON BOND OF AN OFFICIAL.

[Common Pleas Court of Hamilton County.]

THE STATE OF OHIO v. FRANK COTTLE, ADMINISTRATOR OF
GEORGE R. GRIFFITHS ET AL.*

Decided, July 1, 1903.

*Office and Officer—Sureties on Bond of Official—Answerable Only Within the Letter of Their Contract—And Not for Dereliction Outside of Official Duty—Sections 4013, 4042, 4047 and 4055.*

A bond for the faithful performance of the official duties of the clerk of a board of education binds the sureties for the faithful performance of official duty only, and not for malfeasance in the performance of duties not imposed by law.

SPIEGEL, J.

The second amended petition in this cause alleges the election of George R. Griffiths as Clerk of the Board of Education of the School District of Cincinnati for three years from April 16, 1900; that he filled said office from that date until his death, October 1, 1900; that he gave a bond in the sum of $5,000, conditioned upon the faithful performance of all the official duties required of him as clerk of said board, and that he collected under a rule of said board, ordering him to collect tuition fees from non-resident pupils, the sum of $4,757.23, which he embezzled, for which sum the plaintiff asks judgment against the bondsmen.

In cross-petition one of the bondsmen, William Griffiths, demurs, because said petition does not state facts sufficient to constitute a cause of action against him.

The determination of this demurrer depends upon the question whether it was a proper official duty of the clerk by order of the board to collect said tuition fees and account for them to the board of education, or whether it was the duty of the treasurer of the board of education to collect said fees on the order of the

---

*Affirmed, *State, for use of*, v. *Cottle, Adm'r, et al*, 8 C. C.—N. S. 120; affirmed, *State, for use of*, v. *Griffith et al*, 74 Ohio State,—.

clerk, and account for them to the board; for the rule laid down by Mechem in his work on "Public Officers," Section 282, governs the liability of official bondsmen:

"The contract of sureties upon an official bond is subject only to the strictest interpretation. They undertake in the language of Judge Cooley, for nothing which is not within the letter of their contract. The obligation is *strictissimi juris;* and nothing is to be taken by construction against the obligors. They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent."

It would be idle to multiply decisions from every state of the Union in favor of this rule of law. Our own Supreme Court has spoken upon this matter. In *McGovney* v. *The State of Ohio,* 20 Ohio, 93, Judge Ranney, in citing *State* v. *Medary et al,* 17 Ohio, 565, thus forcibly reiterates the rule:

"The bond speaks for itself, and the law is that it shall so speak, and that the liability of sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can. There is no construction, no equity against sureties. If the bond can not have effect according to its exact words, the law does not authorize the court to give it effect in some other way, in order that it may prevail."

In *The City of Greenville* v. *Anderson,* 58 O. S., 463, where the Supreme Courts holds the bondsmen of the defendant as city clerk liable for his malfeasance, the court finds it to have been one of the official duties of the clerk, imposed upon him by statute, to draw warrants upon the city treasurer for claims allowed by council, and the fraudulent raising of said vouchers and appropriating said accounts, to have been done by him while within the exercise of his official duty. As the court says (page 477):

"It is argued in support of the demurrers that the grounds of complaint made in the petition are the alleged failures of Elliott (the defending city clerk) to properly account for and pay over the moneys he wrongfully obtained from the treasury, which, it is urged, were his individual delinquencies, and not official defaults for which his sureties are answerable, because neither the receipt nor disbursement of the moneys pertained to

his office.  And cases are cited which hold that sureties on official bonds, conditioned that the principal should faithfully account for and pay over all moneys received by him, are not liable for any misappropriation of money which came to his hands otherwise than by virtue of his office.  The principle is elementary. The obligation of sureties must be found in the instrument by which they are bound, and can not be enlarged beyond its terms. But there was no failure of Elliott to account for and pay over the moneys he wrongfully received, except his failure to cover them back into the treasury.  *His wrong was in the means employed to obtain the money,* and while these were violations of law, they were nevertheless official acts.''

The last case upon this subject-matter is found in *State* v. *Carter,* 67 O. S., p. 423, wherein the Supreme Court holds that a clerk who collects sewer assessments under an ordinance of council, whether valid or invalid, stands legally charged with such frauds within the meaning of the statute defining embezzlement, and if he fraudulently converts the same to his own use, he is guilty of embezzlement; but, adds the court (p. 440) :

''We do not have the question of liability of the sureties on the bond of the clerk, for moneys collected under an ordinance passed either before or after the execution of the bond, and in what has been said in this opinion we do not pass on such probable or possible question.''

Coming now to examine whether the collection of these tuition fees was a proper exercise of official duty on the part of the clerk of the board of education, the statutes of our state must determine this question, for the board is entirely a creature of statute, and its powers and duties are prescribed thereby.  No section of the Revised Statutes of Ohio authorizes the clerk to act as financial officer of a city school district; but, on the contrary, Section 4042, provides distinctly that ''in each city district the treasurer of the city funds shall be ex-officio treasurer of the school funds.''  Section 4013 prescribes that ''each board of education may admit other persons upon such terms or upon payment of such tuition, as it may prescribe, and the several boards may make such assignment of the youth of their respective districts to the school established by them as will, in their

opinion, best promote the interests of education in their districts.''

It is to be presumed that the board of education passed the rule authorizing the clerk to collect tuition fees and account for them to the board under the statute. But, if so, this action is directly contrary to Section 4047, which provides that ''no treasurer of a school district, except in cases otherwise provided for in this title, shall pay out any school money except on an order signed by the president and countersigned by the clerk of the board of education; and no money shall be paid to the treasurer of a district, other than that received from the county treasurer, *except upon the order of the clerk of the board,* who shall report the amount of such miscellaneous receipts to the county auditor each year, immediately preceding such treasurer's settlement with the auditor.''

This section does not authorize the clerk to receive any miscellaneous moneys; on the contrary, upon his order they must be paid directly to the treasurer. The clerk is simply made the auditing officer, to keep a check upon the treasurer, and the rule of the board of education, ordering the payment of the tuition fees, or any other moneys to the clerk, is clearly invalid and void. That this is the clear intent of our laws upon this subject is further shown by Section 4055, defining the method of keeping accounts by the treasurer and clerk of a school district, namely:

''The auditor of each county shall furnish to the clerk and treasurer of each school district in his county a suitable blank book, made according to the form prescribed by the commissioner of common schools, in which each shall keep an account of the school funds of his district. The clerk's account shall show the accounts certified by the county auditor to be due the district, *all sums paid to the treasurer from other sources on his order,* and all orders drawn by him on the treasurer and upon what funds and for what purposes drawn. The treasurer's account shall show the amounts received from the county treasurer, *all sums received from other sources on the order of the clerk,* and the amounts paid out, and from what funds and for what purposes paid, and a separate account of each fund shall be kept, and each account shall be balanced at the close of the school year, and the balance in the treasurer's hands belonging to each fund shown.''

It will thus be seen by these sections that there is no authority given to the clerk by statute to receive or disburse any money, but the contrary intent is clearly evinced, especially when examined in connection with the statutes prescribing the duties of the treasurer. The clerk is but the bookkeeper of the board of education, having charge of its records and accounts. No rule of the board of education can change the statutory law of the state, which required tuition fees to be paid directly to the treasurer of the board upon the order of the clerk. The law is well settled upon this point, and among the great number of cases cited to me, I will only quote the syllabus in *The People of the State of New York* v. *Penwick*, 60 N. Y., 421:

"The sureties upon the bond of a supervisor, containing the usual condition that he will account for all moneys belonging to the town coming into his hands as such supervisor, are only liable for moneys which their principal is authorized and bound by law to receive in his official capacity as disbursing agent for the town; not for that of which he becomes the voluntary custodian, or which is ordered by the board of supervisors, without authority of law, to be paid to him.

"It is the duty of the board of supervisors to receive moneys raised by tax for relief of the poor of towns, and for highway purposes, to be paid over direct to the overseers of the poor and to the commissioners of highways respectively. A supervisor as such has no authority to receive such moneys, even in transit.

"Accordingly held, where a town collector, in compliance with directions contained in this warrant, paid over to the supervisor the moneys collected for the purposes above specified, that the sureties upon the bond of the supervisor were not liable thereon because of his appropriation to his own use of the moneys so received."

Attention is also called to *Board of Education* v. *Thompson*, 33 O. S., 34, wherein our Supreme Court released the sureties of the treasurer of the board by reason of the illegality of the action of the board.

Following the rule of *stare decisis*, as maintained by our Supreme Court in *State* v. *Carter*, 67 O. S., p. 440, the demurrer must be sustained.

*Harrison & Aston, Frank F. Dinsmore*, for demurrer.
*Corporation Counsel*, contra.