SQUIRES *v.* MILLER.

1. INTOXICATING LIQUORS—BONDS—DAMAGES—CIVIL-DAMAGE LAW —PENALTY OF BOND.

In an action under the civil-damage statute for the death of plaintiff's father, caused by an accident while he was intoxicated, the defendant surety company was not entitled to defeat the action on the ground that judgments of $3,000 and upwards, previously obtained against the principal and surety

on the bond in suit, had been paid by such company, the liquor dealer contributing $2,000 in property towards the obligations: the surety remained bound to the extent of $2,000, the balance of the penalty named in the instrument after deducting the sums paid by the surety. 2 Comp. Laws, § 5398, 2 How. Stat. (2d Ed.), § 5074.

2. Same.
Such liquor aealer's bonds do not, however, permit a recovery in each case of the entire penalty stated; the total liability of the surety in successive cases arising under it does not exceed the penalty named.

3. Same.
The suit is based on the wrongful act, not on the bond, which is a joint and several obligation intended to secure the payment of any judgment obtained for violations of the statute. 2 Comp. Laws, § 5386, 2 How. Stat. (2d Ed.) § 5062.

4. Same—Principal and Surety.
The obligation is not purely contractual, but must be interpreted in the light of the provisions of law regulating the liquor trade: payment by the principal of a liability incurred under the law was not intended to release to the extent thereof the liability of the surety in another case arising during the period covered by the bond, which remains in force until the full amount has been discharged by the surety.

Error to Ingham; Wiest, J. Submitted October 11, 1912. (Docket No. 32.) Decided December 17, 1912.

Case by Leroy E. Squires, an infant, by his next friend, against Louis Miller and the Michigan Bonding & Surety Company, for unlawful sales of intoxicating liquor, resulting in the death of William A. Squires, plaintiff's father. Judgment for defendant. Plaintiff brings error. Reversed.

*William M. Smith*, for appellant.

*A. F. Bunting*, for appellee.

Steere, J. This case involves the scope of a saloon keeper's bond, given under section 5386, 2 Comp. Laws

(2 How. Stat. [2d Ed.] § 5062), and his surety's limit of liability thereon. It is one of a succession of actions brought by members of the family of William A. Squires, deceased, against Louis Miller, a saloon keeper engaged in the sale of intoxicating liquors in the city of Lansing, Mich., and his surety, the Michigan Bonding & Surety Company, to recover, under the appropriate statute, damages resulting from the death of said Squires on March 5, 1909, while intoxicated by liquor obtained at said Miller's place of business.

Deceased was a man in the habit of getting intoxicated, and while in that condition went upon the track of the Belt Line Railway in said city and was killed by a passing train. In three previous suits, arising out of the same state of facts, his wife and two of his minor children recovered and collected judgment from Miller and his surety aggregating $3,000.

Under said section 5386 the common council of the city of Lansing had determined and fixed the bonds of persons engaged in the sale of intoxicating liquors in said municipality, covering the year 1909, at the sum of $3,000. Miller had filed his bond, with the defendant bonding company as surety, in that sum. It followed the form set out in the statute, and had been duly approved.

Plaintiff, Leroy E. Squires, a minor son of said William A. Squires, now brings this suit by his mother, Hattie M. Squires, acting as his next friend, under section 5398, 2 Comp. Laws (2 How. Stat. [2d Ed.] § 5074), which provides, among other things:

"Every wife, child, parent, guardian, husband or other person, who shall be injured in person or property, or means of support or otherwise, by any intoxicated person or by reason of the intoxication of any person, or by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented or malt liquors, to any person, shall have a right of action in his or her own name, against any person or persons who shall, by selling or giving any intoxicating or malt liquor, have caused or contributed to

the intoxication of such person or persons, or who have caused or contributed to such injury, and the principal and sureties to the bond hereinbefore mentioned shall be liable severally and jointly with the person or persons so selling, giving or furnishing," etc.

Under this provision it has been held that, where the injuries arising from an illegal sale of intoxicating liquors are several, there may be separate actions for damages, and recovery in one will not bar a recovery in another; but the wife and minor children of a husband and father may each maintain an independent action for damages sustained. *Friend* v. *Dunks*, 37 Mich. 25; *Rosecrants* v. *Shoemaker*, 60 Mich. 4 (26 N. W. 794).

The declaration in this case is properly framed under the statute with full averments and allegations, correctly stating a cause of action.

Defendant Miller pleaded the general issue. The defendant surety company also pleaded the general issue, and further gave notice in connection therewith, as a special ground of defense, that it had already paid the full penalty of Miller's bond on which it was surety in satisfaction of previous judgments, amounting to $3,000, whereby its obligation as surety upon said bond had been exhausted and fulfilled.

The issues of fact involved in this controversy had been thoroughly threshed over in the previous suits, and when this case came on for trial in the circuit court of Ingham county the parties, by their respective attorneys, simplified matters, so far as possible, by filing a stipulation in which all the material facts alleged in plaintiff's declaration were admitted, and defendants' conceded liability to the plaintiff was fixed at the sum of $500 and costs; the court being authorized to enter a judgment in favor of plaintiff for that amount, unless one or both of defendants was relieved from that liability by reason of payment of the full sum of $3,000, which had been made to other plaintiffs in other suits before that date, as follows:

On a previous judgment recovered April 7, 1910,
    by Hattie M. Squires herself for ---- ---------- $1,449 60
On a previous judgment recovered June 4, 1910,
    by Hattie M. Squires, as next friend for Mildred
    E. Squires, a minor, for the sum of------------  1,250 00
On a previous judgment recovered by Hattie M.
    Squires, as next friend for Arlow A. Squires, a
    minor, on June 4, 1910, for --------------------   300 84
                                                     ─────────
    Aggregating ------------------------------- $3,000 44

—the first two of said judgments having been rendered
upon verdicts by juries, and the third under stipulation
that plaintiff was entitled to recover said amount.

The stipulation also specified that of the $3,000 so be-
fore paid by defendants to other plaintiffs defendant
Miller, the saloon keeper, had himself furnished $2,000
paid by him to defendant bonding company and by it to
said plaintiffs; it being, however, provided that the stipula-
tion should not be considered as an admission, either on the
part of the plaintiff or defendant, as to how much of said
judgments was paid by said Miller, the principal, and how
much by the Michigan Bonding & Surety Company, de-
fendant, but that as between Miller and the bonding com-
pany said bonding company had paid the whole of said
amount, having before paying the same received from said
Miller property of an agreed value of $2,000. By a sup-
plemental stipulation it was agreed as follows:

"Paragraph 7. It is further stipulated and agreed by
and among all the parties hereto that the property hereto-
fore turned over by Louis Miller to the Michigan Bonding
& Surety Company before the three judgments aggregat-
ing $3,000 were paid consisted of certain shares of the
Lansing Brewing Company's stock, certain shares of the
Peerless Motor Company's stock, and certain real estate,
which was of the value of $2,000, so that said Miller in
fact paid $2,000 of the three judgments that were paid
and the Michigan Bonding & Surety Company paid the
other $1,000. And the stipulation heretofore signed and
filed herein is supplemented by the addition of this para-
graph. which shall bind all the parties hereto."

On these stipulated facts the case was argued and submitted to the trial court for its judgment.

That court held the bond was joint and several, and if the saloon keeper paid judgments for such damages to the amount of $3,000, being the penalty of the bond, the condition of said bond was met and the same was satisfied; that it therefore became immaterial who furnished the money to satisfy the bond; that the saloon keeper was responsible for damages found, regardless of the amount of his bond; that under Circuit Court Rule 27 judgment might be entered against him and the other defendant be released; that, the bond having been satisfied, the defendant bonding company was not liable in this action. Judgment was thereupon entered accordingly, in favor of said defendant bonding company, of no cause of action, and in favor of said plaintiff against said principal defendant Miller for $500, the stipulated amount of damages, from which judgment the action has been removed by plaintiff to this court for review on writ of error.

Plaintiff, by appropriate requests, asked the trial court to hold, as conclusions of law under the stipulated facts, that the payment by Miller of judgments recovered against him and his surety for damages resulting from his sales of intoxicating liquor in violation of law does not satisfy the bond to the amount of such payment, nor in any way release the surety of its obligation, which can only be discharged by it having borne the loss and paid judgments recovered for such damages to the full $3,000, that being the amount of its obligation as nominated in the bond; that, inasmuch as it is admitted "said Miller in fact paid $2,000 of the three judgments that were paid, and the Michigan Bonding & Surety Company paid the other $1,000," the bond for $3,000 yet remained in full force and effect to the amount of $2,000, and judgment should also be entered in this case against the surety for the stipulated damages of $500, with costs.

It is pointed out that under somewhat similar statutes in other States authority is found for the proposition that,

inasmuch as a liquor dealer's bond is a public protection comprehending any criminal violation of the liquor law within a certain stated period of time, the surety is holden for all damages arising from violations of said law at any time during the period for which the bond is given; that successive fines may be imposed and collected in criminal prosecutions, and successive recoveries may be had in distinct actions by different parties, during the time covered —the amount of recovery being limited, however, in each case to the penalty stated in the bond. We do not gather from the language of our own statute that such was the legislative intent, and think the following language, in *Merrinane* v. *Miller*, 157 Mich. 279 (118 N. W. 11, 25 L. R. A. [N. S.] 585), is of general application, though used in a particular case where plaintiff had obtained a judgment exceeding the amount of the bond:

"It is urged in the brief of plaintiff that the penalty of the bond does not limit the liability, but that the sureties on the bond are liable to any amount by virtue of their relation to the principal and that the liabilty is not limited to the penalty of the bond. We cannot assent to this view. We think that statute fixing the liability of the sureties must be read in connection with the provision requiring a bond and fixing the penalty thereof."

The question which confronts us here is whether the surety's liability is released or reduced in one case through previous payment by the principal of damages in another case. In this case a sum equal to the penalty of the bond had been previously paid for damages resulting from Miller's violation of the law. He had paid two-thirds of that amount himself. Had he paid all of it, the principle involved would have been the same.

Was it the legislative intent that a bond given as hostage for his observance of the law for a period of one year should be satisfied and discharged, without the surety ever being required to pay anything, in case he at any time personally paid damages or fines to the amount of the bond? Under the strict rules of suretyship as applied to

commercial paper, or to a bond given to a private party to indemnify him in a private matter, it could well be contended that, the principal having responded to the amount of the bond, the surety goes free.

This is not a bond primarily given to indemnify a private party, though by its terms private parties may avail themselves of its provisions.   It is a public bond given to the Commonwealth as a condition precedent to engaging in the liquor traffic, a business which, as a matter of public policy, is regulated and restricted under the police power of the State; violations of the restrictions imposed being made criminal offenses.

Under the law a liquor dealer's responsibility and liability are not confined to nor limited by the exact terms and amount of penalty in his bond.   Throughout the year, and as often as he repeats them, violations of the statute lay him liable to criminal prosecutions, which involve fine or imprisonment, or both; and, irrespective of the limit laid in his bond, he is answerable for all damages suffered by any one as a consequence of his failure to comply with the penal provisions of the statute.   If he is financially able to meet all such liabilities, the bond becomes of no practical importance.   As a wise precaution and reasonable protection to the public, the legislature saw fit to require that an approved bond be filed of from $3,000 to $6,000, in the discretion of the proper municipal board.   It is not unreasonable to presume that this was intended to be in addition to the dealer's individual financial responsibility, and as a further protection.

Among other things, the principal, by the terms of the bond, promises, covenants, and agrees not to violate the law regulating the business in which he is about to engage; that he will not sell to minors, Indians, or intoxicated persons, nor to any person in the habit of getting intoxicated, nor to certain persons when forbidden in writing by a relative or official; and that he will pay *all* fines imposed and *all* damages adjudged to any one, whoever it may be, injured in person, property, or means

of support, or otherwise, as a result of any such unlawful acts. The condition of the bond, in which his surety joins him, is that he "shall well and truly keep and perform all and singular the foregoing covenants and agreements and shall pay any judgment for actual or exemplary damages which may be recovered against him in any court of competent jurisdiction and all fines for violation of" the act in question. It seems clear that the penalty stated in the bond is intended as the limit of the surety's liability, not the principal's, nor for his benefit, except as it otherwise might be more difficult for him to obtain bondsmen. The surety, by the terms of the bond, joins the principal in his promises, and with him covenants that the said principal will faithfully observe the law and conduct his business in compliance with its provisions, in that aspect of the undertaking standing with him and vouching for him, as well as becoming pecuniarily answerable for his delinquencies during the time and to the amount for which the bond is given.

In a suit to recover damages resulting from the liquor dealer's criminal violation of the statute, the principal and surety may be proceeded against jointly or severally in a statutory action of trespass on the case, and not by a strict action in debt on the bond. The bond is not the foundation of the action, nor, standing alone, evidence of liability. It figures as security to enforce payment of any judgment obtained for injuries occasioned by violations of the statute. Those violations give the cause of action and are the basis of recovery, and the surety becomes responsible for *all* of them up to the limit of the penalty stated.

While, under the law of suretyship, a bond is, as a general rule, recognized to be purely a contract which, in its nature, when privately given without any qualifying laws, is to be strictly construed and not extended beyond the scope of the obligation according to its express terms, still a statutory bond to the public given for the observance of a law authorizing a business only permitted under

specified conditions and regulated under the police power of the State, is not in the same sense strictly contractual in its nature.    Its characteristics are also, and, perhaps, to a greater degree, statutory.    It is to be read and construed and enforced in connection with and according to the statute pursuant to which it is given, and should be interpreted according to the purpose, intent, and meaning of the legislative enactment.    *Brockway* v. *Petted*, 79 Mich. 620 (45 N. W. 61, 7 L. R. A. 740); *Merrinane* v. *Miller, supra.*

When, in that connection, we consider the wrongs sought to be remedied, the reason for and policy of the law, and the purpose of the bond, read in the light of the statute under which it is given, it can be deduced with reasonable certainty that it was the legislative intent that the penalty named should measure the surety's individual liability for any breach of the law by the principal during the year the bond covers, which liability continues throughout that period, or until paid by the surety, in case of default on the part of the principal; that payment by the principal in the settlement of fines or claims for damages, with or without suit, where the surety has not been called upon to respond and has stood no loss, does not operate to release or reduce the bond; that it stands during the year for successive recoveries, in separate actions, until its full amount has been paid by the surety.

We cannot read into the bond and statute, considered together, any intent that payment in one case by the principal, whose liability is unlimited, shall operate in another case to release the surety, whose liability is limited; but all intendments of the law are to the contrary.

While the law is not concerned with the private relations between principal and surety, or the motives of the latter in assuming the obligation, it can be said in passing that this construction works no unreasonable hardship and involves no deterring uncertainties.    The surety knows exactly what his limit of liability is and the risk he assumes.    He simply obligates himself for the period of

one year to pay all adjudicated fines and damages which the liquor dealer fails to pay, up to the amount of the penalty stated in the bond.

The judgment is reversed and the case remanded to the trial court, with directions to enter judgment in accordance with the foregoing conclusions.

MOORE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.