STATE, Appellant, vs. HELMANN and another, Respondents.

*May 27—June 13, 1916.*

*Intoxicating liquors: License bond: Action for breach: District attorney: Condition precedent: Judgment for full penalty: Statutes: Construction.*

1. Under sub. 1, sec. 752, Stats. 1915, the district attorney has authority to prosecute an action to recover the penalty on a liquor license bond for breach thereof, the state being interested.
2. The rule that a penal statute should be strictly construed does not mean that it should be so construed for the purpose of minimizing its effect, but that it should be so construed to effect the legislative intent—that being the sole office of judicial construction.
3. An unsatisfied judgment collectible out of a liquor license bond given under sec. 1549, Stats., is not a condition precedent to the maintenance by the state of an action for breach of such bond.
4. For breach of a liquor license bond, judgment, in an action by the state, should go for the full penalty of $500, that being treated as liquidated damages; and the court may then apply the proceeds primarily towards the satisfaction of existing judgment indebtedness, if any, as in said section provided.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Action prosecuted by the district attorney to recover the penalty on a liquor license bond for breach thereof in selling intoxicating drinks to persons who were intoxicated or bordering thereon.

The bond was given under sec. 1549, Stats., which requires every person, as a condition of receiving a license to keep a place for the sale of intoxicating liquor, to deliver to the clerk of the issuing municipality a bond in the sum of $500

"conditioned that the applicant, during the continuance of his license, will keep and maintain an orderly and well regulated house; that he will permit no gambling with cards, dice or any device or implement for that purpose within his prem-

ises or any outhouse, yard or shed appertaining thereto; that he will not sell or give away any intoxicating liquor to any minor, having good reason to believe him to be such, or to persons intoxicated or bordering upon intoxication or to habitual drunkards; and that he will pay all damages that may be recovered by any person pursuant to section 1560, and that he will observe and obey all orders of such supervisors, trustees or aldermen, or any of them, made pursuant to law. In case of the breach of the condition of any such bond an action may be brought thereon in the name of the state of Wisconsin, and judgment shall be entered against the principals and sureties therein named for the full penalty thereof; and execution may issue thereupon by order of the court therefor to satisfy any judgment that may have been recovered against the principal named in said bond by reason of any breach in the conditions thereof or for any penalties or forfeitures incurred under this chapter. If more than one judgment shall have been recovered the court, in its discretion, may apply the proceeds of said bond towards the satisfaction of said several judgments in whole or in part in such manner as it may see fit."

There was no claim of any conviction of the principal in the bond having occurred, or any judgment having been rendered against him for the recovery of a fine or costs or damages. In due course, the jury found that he had sold intoxicating drink on two occasions as charged. Judgment was rendered against the plaintiff, notwithstanding the verdict, upon the ground that no action will lie upon such a bond in advance of there being some judgment for a recovery of money to be collected therefrom and the same being unsatisfied.

For the appellant there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

*J. L. Mahoney,* for the respondent *Helmann,* and *William O. Kelm,* for the respondent *Fidelity & Deposit Company of Maryland.*

MARSHALL, J.   It is contended, on behalf of respondents, that the district attorney had no authority to commence or prosecute the action.   He had such authority, under sub. (1), sec. 752, Stats., if the state was interested, and we think it was, as will be seen by what follows.

It was the opinion of the trial court that statutes and decisions elsewhere do not materially aid in determining whether an unsatisfied judgment of some sort, collectible out of a liquor license bond, must exist as a condition precedent to an action thereon and with that we may well agree.   It is well illustrated by the decisions cited by counsel for respondents in support of the judgment.

In *State v. Estabrook,* 29 Kan. 739, the court dealt with a druggist bond.   It could only be breached by some violation of law which would subject the violator to a prosecution and judgment for a money recovery and the statute did not provide for a judgment for the full penalty of the bond in case of any breach thereof.

In *Squires v. Miller,* 173 Mich. 304, 138 N. W. 1062, the court had to do with a bond given to secure payment of civil damages under a statute creating liability therefor.   The amount of the bond was not small and applicable to all cases as here, but was fixed by the common council with reference to being adequate security for payment of any judgment which might be rendered under the civil damage act.   In the particular case, the penal sum was $3,000.   The case went upon the ground that it was based on the wrong and not on the bond.

In *State v. Larson,* 83 Minn. 124, 86 N. W. 3, the statute was different in several material features from ours.   The penalty in the bond required by the statute was $2,000, and the amount inclined the court to the view that the legislature did not intend it to be considered as liquidated damages; but, most significant of all, the statute did not expressly pro-

vide, as ours does, that in case of any breach of the bond, an action might be maintained thereon and judgment be rendered "for the full penalty." The absence of such a provision from the statute seems to have been the deciding circumstance. It is quite probable that but for such absence the result would have been different. After reasoning that the large penalty rendered the statute open to construction and pointing to a mere purpose of making the bond security for payment of money recoveries, the court said, in regard to the contrary view: "We cannot believe that the legislature intended any such drastic measure; for, had that been the design, the law would have so stated. This has been done in some states; it being expressly provided in some that *judgment may be entered on such a bond against the principal and sureties for the full penalty thereof.*" That seems to indicate, pretty plainly, that had such feature characterized the statute, the result would have been different, notwithstanding the drastic character of the penalty. It should be noted that the decision was by a divided court. An able dissenting opinion was filed, pointing out that, in all the authorities, a distinction is made between the bonds given to the state, conditioned for an observance of law, and other bonds, and that, as to the former, the designation "of a specific sum as a penalty has the effect of constituting a bond given in compliance" with the statute "a covenant for liquidated damages, or a penalty imposed by the sovereign power . . . unless a different intent appears." 4 Am. & Eng. Ency. of Law (2d ed.) 700.

The foregoing shows that authorities referred to by counsel for respondents furnish little or no support for the decision appealed from. Doubtless the trial court so viewed the matter in discarding them, as appears to have been the case, and pinning the result to the words of the statute, itself, in the light of rules for construction.

Much stress seems to have been put upon the fact that our

statute has been in existence for many years and there is no record of its having been regarded as permitting such a judgment as is contended for in behalf of appellant. That circumstance does not seem to be entitled to much weight, since there is no record to the contrary. The court is not embarrassed by any precedent or practical construction, as to giving effect to the statute according to what appears to have been the legislative intent.

As before indicated, the trial court viewed the statute as ambiguous and proceeded to construe it. In doing so, the principle was applied, which is right in its place, though not always rightly used, that a penal statute should be strictly construed. That does not mean that such a statute should be so construed for the purpose of minimizing its effect; but be so construed to effect the legislative intent. The sole office of judicial construction of a statute is to give efficiency to the purpose of the lawmaking power. Where such purpose is clear, the legislative language should be strictly or liberally construed according to the effect as regards such purpose. Where the purpose is uncertain, the language should be read strictly to soften its severity; where otherwise, it would express a meaning which would be unreasonably harsh. The idea that a penal statute, or statutes in derogation of the common law, should, generally, be strictly construed in favor of minimizing the disturbance of the situation existing at the time of its origin, has a tendency to defeat legislative efforts to remedy existing harmful conditions and to prevent recurrence of them. It may be that the very opposite of strict construction should be applied, where construction is needed. The purpose of the statute is the best guide to go by since all rules for construction are intended to give vitality to such purpose. Its language being plain, whether the legislative policy is good or bad, or whether the statute seems rather harsh, is no concern of the court, where the circumstances in that regard are not such as, of them-

selves, or in connection with others, to render the legislative language ambiguous. *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179.

Reading the language of the statute in the light of the whole scope of the condition of the bond and the purpose indicated, it seems plain. As we have said, the required condition of the bond covers many transgressions, which experience evidently showed at the time of the enactment of the statute, were liable to occur and should be guarded against by a general penalty. Many were not provided for in any other way. To the condition as a whole, the language was directed "In case of the breach of the condition of any such bond an action may be brought thereon in the name of the state of Wisconsin, and judgment shall be entered against principals and sureties therein named for the full penalty thereof."

Looking to the effects and consequences of administering the statute according to its plain ordinary sense, no absurd or unreasonable result would occur which suggests ambiguity. The penalty is not shockingly large, as in *State v. Larson,* 83 Minn. 124, 86 N. W. 3, which so efficiently, as we have seen, influenced the Minnesota court. The penalty is so small, in connection with the fact that it applies to all cases, as to rebut the idea that it was intended solely as security for payment of judgments for the recovery of money. On the other hand, if full effect were not given to the statute, there would be the absurd result of many features of the condition of the bond being wholly without remedy. That situation in *Coggeshall v. Pollitt,* 15 R. I. 168, 1 Atl. 413, was regarded as a conclusive indication of legislative intention that the penalty should be treated as liquidated damages for violation of law.

There are many authorities in line with *Coggeshall v. Pollitt, supra,* some of which are cited to our attention by counsel for appellant. *Lyman v. Schenck,* 37 App. Div. 234, 55 N. Y. Supp. 770; *Lightner v. Comm.* 31 Pa. St.

341; *Tripp v. Norton,* 10 R. I. 125; *State ex rel. Canyon Co. v. Forch,* 26 Idaho, 755, 146 Pac. 110; *Granger v. Hayden,* 17 R. I. 179, 20 Atl. 833; *State v. Corron,* 73 N. H. 434, 62 Atl. 1044; *Paducah v. Jones,* 126 Ky. 809, 104 S. W. 971; *Cullinan v. Burkard,* 93 App. Div. 31, 86 N. Y. Supp. 1003.

In 1 Woollen & Thornton, Intox. Liq. sec. 482, this is deduced from the authorities: "If the bond provide for the recovery of a certain penalty, the amount of damages occasioned by the violation of the law has no place in the case." "The sum named in the bond, where it is the amount of recovery for any breach of its conditions, is treated as liquidated damages."

In general, in the cases cited, the penalty was moderate, being $500 or less, and the bond covered breaches for which there could be no assessment of actual damages, as in this case. In *Cullinan v. Burkard, supra,* the bond was very much like the one here, and the court remarked: "The sum named in the bond was fixed as the amount which, in certain contingencies, should be paid as damages which could not be fixed by any of those methods which commonly are applied to the determination of damages." In *Paducah v. Jones, supra,* the bond was of the same general character as here, and it was held: "If the bond is broken" the principal and surety "are liable for the sum stipulated therein." "It is not contemplated that the recovery should be for any less sum than that fixed. . . . The only legitimate subject of inquiry is whether or not the condition of the bond has been broken. If it has, the sureties by the letter of their undertaking agree that they will pay a certain sum." See, also, *Clark v. Barnard,* 108 U. S. 436, 2 Sup. Ct. 878, quoting at length page 458 from Chief Justice Taney's opinion in *U. S. v. Montell,* Taney, 47, where it was held that the amount of the recovery on a bond given, conditioned upon the observance of law, is the amount named therein "inflicted by the sovereign power for breach of its laws."

We do not overlook the provision that "execution may issue

thereupon by order of the court therefor to satisfy any judgment that may have been recovered. . . . If more than one judgment shall have been recovered the court, in its discretion, may apply the proceeds of said bond towards the satisfaction of said several judgments in whole or in part in such manner as it may see fit." That does not seem to cast any serious doubt on whether the language preceding it, provides for a recovery upon the bond of the full penalty, upon a successful prosecution for any breach of it.

It will be observed that no room is left by the statute for collection of any judgment, by enforcing the judgment upon the bond, not existing at the time of rendition of the latter. The entire proceeds of the bond liability are then available for any proper use. The bond is wholly merged in the judgment on it.

We reach the conclusion that the legislative purpose was as expressly stated, that judgment in a case of this sort, where a breach is found, shall go for "the full penalty thereof;" that being treated as liquidated damages; but that the court may apply the proceeds, primarily, to the satisfaction of existing judgment indebtedness. This, we think, is not only the plain meaning of the bond, but is supported by authorities in general.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment in accordance with this opinion.