114

BECHTEL (HATTIE), Appellant, vs. COLUMBIA CASUALTY
COMPANY, imp., Respondent.
SCHMITT (JOHN H.), Appellant, vs. COLUMBIA CASUALTY
COMPANY, imp., Respondent.
[Consolidated actions.]

*January 9—February 5, 1929.*

For the appellants there were briefs by *Miller, Mack & Fairchild,* and oral argument by *Leon F. Foley,* all of Milwaukee.

For the respondent Columbia Casualty Company there was a brief by *Lamfrom, Tighe, Engelhard & Peck,* attorneys, and *Leon B. Lamfrom,* of counsel, all of Milwaukee, and oral argument by *Egon W. Peck.*

OWEN, J. The trial court held that the Columbia Casualty Company was in no manner liable to the plaintiffs and entered judgment dismissing the action as to said Columbia Casualty Company. It is apparent from the statement of facts that this conclusion of the court was based upon its finding, first: "That at no time was there a determination by the railroad commission of the state of Wisconsin that the securities so offered were not Class A securities;" and second, on the further finding that, except as to the letter of September 25th, set forth in the statement of facts, "no demand was ever made prior to the institution of this action upon said Columbia Casualty Company for any payment under the bond executed by said Columbia Casualty Company as surety." We are to inquire whether these findings

of fact are sustained by the evidence, and, if so, whether they support the judgment.

Sec. 183.26 (2) (a), Stats. 1923 (which statutes govern the rights of the parties hereto), classifies as Class A securities "Notes, bonds, or other evidences of indebtedness issued by a person or company, secured by first mortgage lien upon real estate or leaseholds and buildings to be erected thereon, where it is established to the satisfaction of the commission," etc. It was under this provision of the statutes that the Guaranteed Bond Company sought to qualify the Carnegie Hall Apartment bonds as Class A securities.

By sec. 183.26 (2) (a) 3 it is provided that the railroad commission may "refuse to classify such securities as Class A securities and classify them in Class B or deny a permit for the sale thereof."

By sec. 183.27 (1) the sale of such securities prior to the issuance of a permit is prohibited, except as provided in sub. (4) and (5) of said section. By sub. (4) it is provided that any broker desiring to sell Class A securities before making application for a permit or securing such permit may do so upon compliance with the following conditions: (a) such broker shall at or before the time of offering any specific security for sale notify the commission in writing of the name or description of such security and shall, within thirty days or within such further time as the commission may fix, apply for a permit for the sale thereof as Class A security; (b) file with the commission a bond executed by a surety or guaranty company authorized to do business in this state, in the sum of $20,000, conditioned to repay to any purchaser of such securities on demand any money received of him therefor if said application shall not be made as above provided or the commission shall determine that the securities so offered are not Class A securities, and to pay to the commission the fees required by sec. 183.38.

The legislative scheme thus provided is quite obvious.

First, Class A securities are defined. Those having securities which they desire to market in the state of Wisconsin which they believe to come within the statutory definition of Class A securities may apply to the railroad commission for a permit to market them as Class A securities. Upon such application and the investigation required by the statute, the commission may classify such securities as Class A securities, or Class B securities, or deny a permit. In order that the marketing of such securities may proceed pending the determination of the railroad commission 'upon the application, it is provided that a licensed broker may proceed with the sale of such securities as Class A securities if the bond specified in sec. 183.27 (4) (b) be filed with the commission. The condition of the bond required is, "if the commission shall determine that the securities so offered are not Class A securities." It is obvious that the manifest legislative intent does not receive the clearest expression in this phrase. In view of the entire scheme, it is apparent that the legislature intended to permit the sale of supposed Class A securities in advance of a permit upon the filing of this bond, but that the broker making such sale should be under obligation to refund to the purchaser of such bonds the amount of the purchase price in case the railroad commission classified such securities either as Class B securities or denied a permit for their sale. In other words, the legislature intended that this liability should arise in the event that the railroad commission failed or refused to classify said securities as Class A securities.

It must be remembered that this was a statutory bond given to accomplish a statutory purpose, that the terms of the statute are to be read into the bond, and that the bond is to be construed conformably to the statute. *Baumann v. West Allis,* 187 Wis. 506, 204 N. W. 907. The construction which the trial court gave to this bond was all too nar-

row and too rigid, and left out of view entirely the manifest legislative scheme and purpose. The condition of the bond was broken when the commission denied the permit. Columbia Casualty Company should not have been relieved of liability for this reason.

It is next argued that there was no demand made upon the Columbia Casualty Company for a repayment of the moneys prior to the commencement of the action. Although the terms of the bond recite that the "Guaranteed Bond Company, as principal, and Columbia Casualty Company, as surety, do hereby undertake in the sum of $20,000 to repay to any purchaser of the securities offered for sale by said Guaranteed Bond Company . . . on demand any money received from such purchaser by the said Guaranteed Bond Company,"—as heretofore stated, the bond must be construed agreeably with the statute. The statute clearly imposes the primary liability upon the broker. The bond is given merely as a guaranty that the broker will meet this liability. The statute does not contemplate a bond imposing primary liability upon the surety. The statute requires the broker to repay. He is the only one that can repay, because he is the only one that received payment. There is nothing for the Columbia Casualty Company to repay, as it has received nothing. It simply guarantees the discharge of this obligation on the part of the broker. While according to the conditions of the bond a demand upon the Casualty Company might be a condition precedent to the maintenance of the action, we find no such provision in the statute, and the bond can impose no condition to recovery not authorized by the statute. We therefore hold that there is no ground for saying that any demand upon the Casualty Company was necessary for the maintenance of these actions. But if there was, we should have no hesitation in determining that the letter of September 25th constituted a sufficient demand.

It is next argued in support of the judgment that the plaintiffs are bound by an election of remedies, and that they cannot maintain this action against the Casualty Company, having chosen to pursue another and inconsistent remedy. Sec. 183.34 makes every sale of securities in violation of the provisions of the Blue Sky Law, so called, voidable at the election of the purchaser, and makes any company, broker, or other person, by or on behalf of whom such sale was made, jointly and severally liable to such purchaser upon tender to such company, broker, or person, or into court, of the securities sold, for the full amount paid by such purchaser, together with interest from the date or dates of payment, at the rate stipulated in the securities sold. It appears that the early efforts of the plaintiffs to recover were based on the remedy thus provided. It will be seen that sec. 183.34 affords a cause of action in favor of the purchaser against any company, broker, or other person participating in the sale where the sale was in violation of law.

It is contended by the appellants that the sales here under consideration were in violation of law because the securities sold were not in fact Class A securities, that sec. 183.27 authorizes the sale only of such securities as are in fact Class A securities upon the giving of the bond, and that the remedies provided by secs. 183.27 and 183.34 are cumulative and not inconsistent. Respondents contend that sec. 183.34 affords a remedy where the sales are in violation of law, that sec. 183.27 affords a remedy where the sales are in compliance with law, and that the remedy provided by sec. 183.34 is inconsistent with the remedy provided by sec. 183.27. We have little doubt that the sales under consideration were authorized by the statute and that they were not sales made in violation of law. It seems to be the purpose of the statute to permit the sale of securities deemed to be Class A securities in advance of a permit where the bond required is filed

with the railroad commission. The purpose of the bond is to guarantee the refunding of the purchase money in case the security shall fail to qualify as Class A security. If the statute authorizes the sale of only Class A securities, then there is no reason for the giving of the bond. We consider the sales under consideration lawful, and the remedy available to plaintiffs that provided by sec. 183.27. By attempting to proceed under sec. 183.34, did they make an election of remedies which bars them from proceeding under sec. 183.27? If the sale was in compliance with law, the remedy provided by sec. 183.34 was not available to them. As a matter of fact they had but one remedy, that provided by sec. 183.27, and where but one remedy exists there can be no such thing as an election of remedies. Had they continued under sec. 183.34 they must have failed. But that would not have barred them from proceeding again under a remedy which was available to them. "A misconception of remedies should not be mistaken for an election between inconsistent remedies." *Fuller-Warren Co. v. Harter*, 110 Wis. 80, 85 N. W. 698. Here there was no opportunity for an election of remedies because but one remedy existed. It is possible that in the beginning they misconceived their remedy, but such mistake did not amount to an election of remedies.

*By the Court.*—Judgments reversed, and causes remanded with directions to render judgments in favor of the plaintiffs and against the defendant Columbia Casualty Company.