STATE, Respondent, vs. HACKBARTH and others, Appellants.

*April 14—May 17, 1938.*

For the appellants there were briefs by *Alvin L. Zelonky* of Milwaukee, attorney for Edna Chin, and *Bendinger, Hayes, Kluwin & Schlosser* and *Giles F. Clark,* all of Milwaukee, and *Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *H. H. Schoepp,* all of St. Paul, Minnesota, attorneys for the Saint Paul-Mercury Indemnity Company, and oral argument by *Mr. W. H. Oppenheimer, Mr. Gerald F. Hayes, Mr. Clark,* and *Mr. Zelonky.*

The *Attorney General* and *Carl J. Ludwig,* special counsel, for the respondent.

Briefs *amici curiæ* were filed by *Padway, Goldberg & Tarrell,* attorneys, and *Joseph A. Padway* of counsel, all of Milwaukee, for the Bartenders League of America, Local No. 64; by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* of counsel, all of Milwaukee, for the Ohio Casualty Insurance Company; by *Paul E. Jorgensen* of Racine, for the Tavern League of Wisconsin, Inc.; by *George H. Gordon, Law & Brody* of La Crosse; and by *Fred E. Steele,* city attorney of La Crosse.

FRITZ, J. The bond, upon which this action is based, was given on June 24, 1935, pursuant to sec. 176.10, Stats. 1935 (ch. 13, Laws of Sp. Sess. 1933–34), and provides, in so far as here material, that the defendants, Hackbarth and Chin, as principals, and the Saint Paul-Mercury Indemnity Company, as surety, "are held and firmly bound unto the state of Wisconsin in the penal sum of one thousand dollars, well and truly to be paid to the said state of Wisconsin;" and that "the condition of this obligation is such: That whereas, the said" Hackbarth and Chin have applied to the clerk of the town of Brookfield for a Class "B" license to sell and deal in and have in possession with intent to sell and deal in intoxicating liquors—fermented malt beverages within the town, "now therefore, *if* such license shall be granted to" them and they and their representatives engaged in the business conducted under the license, "shall not violate any provision of chapter 176 of the statutes of Wisconsin; shall keep and maintain an orderly and well regulated house; shall not sell or give away any intoxicating liquor to any minor, having good reason to believe him to be such, or to any person intoxicated or bordering upon intoxication or to any habitual drunkard; shall pay all damages that may be recovered by any person pursuant to section 176.35 of the statutes of Wisconsin; and shall observe and obey all orders of the

supervisors, trustees or aldermen of said town of Brookfield, or any of them, made pursuant to law, then this obligation shall be null and void; otherwise to be and remain in full force and effect."

It is alleged in the complaint that on August 17, 1935, the conditions of the bond were violated by the defendant Chin by keeping a disorderly house on the licensed premises, contrary to sec. 176.10, Stats. 1935; and that, by reason thereof, the defendants are indebted to the plaintiff in the full amount of said bond according to the provision of that statute. The answering defendants admit the conviction and sentence of Chin for keeping a disorderly house on August 17, 1935, but they allege that she was convicted and imprisoned for the same violation which is the basis of this action. They also allege that the town of Brookfield adopted an ordinance which provided that applicants for a Class "B" liquor license, who wished to furnish a cash bond under sec. 176.10, Stats. 1935, may furnish such a bond in the sum of $200, which was the amount required by the general custom throughout the state from those wishing to furnish a cash bond; and that if sec. 176.10, Stats. 1935, and bonds executed by a surety company thereunder are construed to require payment of the full sum of $1,000 to the state upon a breach of any condition thereof, then the statute is in violation of the equal-protection and due-process provisions of the Fourteenth amendm., U. S. Const., and also secs. 1 and 22 of art. I, Wis. Const.

The defendants concede in their briefs that the state can maintain this action against them on their bond for the breach of a condition thereof, but contend that the bond is merely for "indemnity" and therefore the state is not entitled to payment of the full amount of $1,000, as liquidated damages thereunder. Although this appeal is from an order sustaining demurrers to alleged defenses in answers, the real

purpose of the parties is to test and have an adjudication as to whether upon the allegations of the complaint,—assuming the facts stated in the answers are admitted,—the state is entitled, upon establishing a breach of any condition of the bond, to judgment for immediate payment to it of the full penalty of $1,000 specified in the bond. The state contends that that full amount is due and payable to it upon breach of any condition of the bond; and that it can have judgment herein for the immediate payment thereof under the provisions of the bond and some of the provisions in sec. 176.10, Stats. 1935, in view of the construction given to similar provisions in a bond and in sec. 1549, Stats. 1878–1917, in *State v. Helmann,* 163 Wis. 639, 646, 158 N. W. 286, and *Thomas v. Kind,* 222 Wis. 645, 652, 269 N. W. 543.

In the *Helmann Case* the court said,—

"We reach the conclusion that the legislative purpose was as expressly stated, that judgment in a case of this sort, where a breach is found, shall go for 'the full penalty thereof;' that being treated as liquidated damages; but that the court may apply the proceeds, primarily, to the satisfaction of existing judgment indebtedness. This, we think, is not only the plain meaning of the bond, but is supported by authorities in general."

In the *Thomas Case* we said,—

"It must be presumed, in the absence of anything showing a contrary intention, that when the legislature, in 1934, incorporated into sec. 176.10 language which theretofore had been construed by this court in *State v. Helmann, supra,* it intended that it should mean what this court had construed it to mean."

And therefore we concluded that,—

". . . the full penalty of the bond was recoverable by the state, notwithstanding the facts that no judgment for damages had been recovered by anyone against the principal by reason of the breach of the conditions of the bond, and no

penalties or forfeiture had been incurred under the chapter, of which sec. 1549 was a part."

All of the parties recognize that, inasmuch as the bond is a statutory bond, given to accomplish a statutory purpose, the terms of the statute are in effect a part of the bond, and it must be construed conformably to the statute. *Bechtel v. Columbia Cas. Co.* 198 Wis. 114, 223 N. W. 568; *Squires v. Michigan Bond. & S. Co.* 173 Mich. 304, 138 N. W. 1062, 43 L. R. A. (N. S.) 76. But the defendants contend that the *Helmann* and *Thomas Cases* are not controlling (1) because there are material differences between sec. 1549, Stats. 1878, and sec. 176.10, Stats. 1935, by reason of additional provisions in the latter which give rise to questions of construction that were not presented or considered in those cases; and (2) because it is evident, when due consideration is given to the legislative history and the procedure established at the time of the enactment of sec. 1549, Stats. 1878, in relation to actions to recover for breach of conditions of a bond (neither of which were brought to the court's attention or considered in those cases) that it was probably the legislative intention that bonds given under the provisions of sec. 1549, which have been re-enacted in sec. 176.10, Stats., were to be but bonds of indemnity and not for liquidated damages; and that therefore the decision in the *Helmann Case,* which we followed in the *Thomas Case,* was based upon a mistaken view as to the effect of the statutes involved therein. In that connection the defendants rely on the proposition that the principles of *stare decisis,* as distinguished from *res adjudicata,* apply only to questions of law which were actually presented, considered, and decided, and do not apply to rulings dependent on legal questions which lurked in the record, but were not called to the court's attention, or observed and passed on. *Kennedy v. Commissioner,* 256 Mass. 426, 152 N. E. 747, 749; *Scobie v. Tax Comm.*

225 Wis. 529, 275 N. W. 531. In *McGovern v. Eckhart,*
200 Wis. 64, 227 N. W. 300, after extended and careful
consideration, the rules of *stare decisis* and *res adjudicata*
were modified so as to permit the correction of an error
made by this court in a prior decision whenever the court is
convinced that for cogent, substantial, and proper reasons a
prior ruling in the same or another case ought not to stand
as the law of that case and other cases. That modification
was declared on the third appeal in an action in which there
was under consideration the legislative intent under secs.
116.03 and 116.04, Stats. (enacted by ch. 438, Laws of
1903), which had been definitely construed in *Quiggle v.
Herman,* 131 Wis. 379, 111 N. W. 479, decided in 1907.
That construction was questioned, but followed, on the first
appeal in *McGovern v. Eckhart* (192 Wis. 558, 213 N. W.
332) and also on the second appeal (196 Wis. 178, 218
N. W. 830), although the court then said that the construc-
tion was clearly erroneous, and that it would not so construe
the statute if the question were being presented as an origi-
nal proposition. However, on the third appeal in that case,
after the legislature had acquiesced in that construction for
over twenty years, and although that construction would
ordinarily have been held to control, in view of the estab-
lished rules of *stare decisis,* as well as *res adjudicata,* which
also was applicable by reason of the decisions on the first and
second appeals in the *McGovern Case,* the court nevertheless
overruled that construction because it was convinced then
that the prior ruling was palpably wrong. In that connec-
tion the court said,—

". . . when, as now, we are convinced that the prior rul-
ing in a particular case ought not to stand as the law for that
case and other cases, we shall so hold and not deny to liti-
gants or ourselves the right and duty of correcting an error
merely because of what we may be later convinced was
merely our *ipse dixit* in a prior ruling in the same case."

This court has "time after time overruled its own prior decisions, and we shall therefore now, and hereafter, reserve unto ourselves a right to correct, and recognize the duty so to do, a prior ruling made by us in the same case, whenever cogent, substantial, and proper reasons exist."

"On the second appeal we expressly recognized, and now do so again, that the decision in the *Quiggle Case, supra,* was based upon a mistaken view as to the effect of the statutes there and here involved. Such prior ruling being upon the construction of a statute, on a matter of public policy declared by the legislature, and within its power to so declare, we ought not to hesitate to correct such mistaken pronouncement of ours as to such legislative public policy." *McGovern v. Eckhart,* 200 Wis. 64, 77, 78, 79, 227 N. W. 300.

Prior rulings construing or giving a certain effect to a statute were similarly overruled in the following cases, when it became evident on a subsequent appeal that by reason of other provisions or crucial matters not presented or considered theretofore, the prior ruling was clearly wrong. *Remey v. Iowa Cent. Ry. Co.* 116 Iowa, 133, 89 N. W. 218; *Honn v. Elliot,* 132 Kan. 454, 295 Pac. 719; *Stierle v. Rohmeyer,* 218 Wis. 149, 260 N. W. 647.

As is claimed by the defendants, the history as to the procedure up to 1878 in relation to actions to recover for breach of conditions of a bond was not presented or considered in either the *Helmann* or the *Thomas Case,* but if it had been, the rulings therein might well have been otherwise, in so far as the court's conclusion that the full penalty of the bond was recoverable by the state, as "liquidated damages," was based on the words that "judgment shall be entered . . . for the full penalty thereof," which appear in identical provisions in secs. 1549 and 176.10 (3), (4), Stats., to wit:

"In case of the breach of the condition of any such bond an action may be brought thereon in the name of the state of Wisconsin, and *judgment shall be entered* against the principals and sureties therein named *for the full penalty thereof;*

and execution may issue thereupon by order of the court therefor to satisfy any judgment that may have been recovered against the principal named in said bond by reason of any breach in the conditions thereof or for any penalties or forfeitures incurred under this chapter."

"If more than one judgment shall have been recovered the court, in its discretion, may apply the proceeds of said bond toward the satisfaction of said several judgments in whole or in part in such manner as it may see fit."

Prior to the enactment in 1874 of sec. 1549, Stats. 1913, it was provided in secs. 69–72 (p. 208), Wis. Stats. 1839 (to substantially the same effect see secs. 4–7, ch. 105, Rev. Stats. 1849; secs. 19–22, ch. 140, Rev. Stats. 1858; secs. 20–23, ch. 140, Stats. 1871, until superseded in the Rev. Stats. 1878 by the present sec. 270.61, Stats.), that,—

"Sec. 69. In *all* actions brought for breach of the condition of a bond, or to recover a penalty for the nonperformance of any covenant, contract or agreement when it shall appear, . . . that the condition is broken, or the penalty forfeited, judgment shall be entered in the common form, *for the penal sum, but no execution shall issue* thereon, *except* as is provided in the following sections.

"Sec. 70. The court shall award an execution in such case for so much of the penal sum as shall then be due and payable, in equity and good conscience for the breach of the condition, or other nonperformance of the contract, which sum shall be ascertained and determined by the court. . . .

"Sec. 71. If any further sum shall afterwards become due on such bond or other contract, the plaintiff, . . . may have a *scire facias* on the judgment from the court in which it was so rendered, . . . suggesting such further breaches of the contract as shall have accrued, and summoning the adverse party to show cause why execution should not be awarded upon the judgment for the damages caused by such further breaches.

"Sec. 72. The sum due on such suit shall be assessed and determined in the same manner as in the original suit, and execution shall be awarded accordingly, and the like proceedings may be reported upon occasion of any further

breaches of the same contract, as often as they shall occur, until the whole of the penalty is exhausted."

In *Rich v. Warner* (1846), 1 Pin. 646, 649, this court, in noting that the statute was a literal copy of a Massachusetts statute, said,—

"The proceedings in New Hampshire and Massachusetts (and formerly in Maine) in debt on bond with a penalty, are according to the course of the common law, by which the plaintiff can assign only a single breach. . . .

"When it appears to the court that the penalty of the bond is forfeited, judgment is to be entered (by statute provisions) for such sum as is equitably due to the plaintiff at the time of rendering the judgment. And if the condition of the bond be such that future damages may arise for future breaches, judgment is to be rendered for the penalty, and execution awarded for the damages already accrued, and the judgment stands as security for future damages, to be recovered by *scire facias*."

See also *Warren v. Gordon,* 10 Wis. 441, *499. That practice of allowing the entry of judgment in "all actions brought for the breach of the conditions of a bond" for the full penal sum thereof, but not issuing any execution thereon, excepting for such damages as the court determined had already accrued, and the retention of the judgment as security for future damages to be recovered by *scire facias* (or,—after 1858,—by an action), was evidently intended to be retained in respect to bonds given under sec. 1549, Stats. 1878, as well as under sec. 176.10, Stats. 1935, in that, although it was provided therein that "an action may be brought thereon in the name of the state . . . and judgment shall be entered . . . for the full penalty thereof," nevertheless the issuance of executions thereunder is governed by the express provisions therein that,—

". . . execution may issue thereupon by order of the court therefor to satisfy any judgment that may have been recov-

ered against the principal named in said bond by reason of any breach in the conditions thereof or for any penalties or forfeitures incurred under this chapter."

And that,—

"If more than one judgment shall have been recovered the court, in its discretion, may apply the proceeds of said bond toward the satisfaction of said several judgments in whole or in part in such manner as it may see fit."

It is obvious that those provisions were intended to limit the issuance of executions under judgments entered in actions brought by the state, to recoveries for the purposes stated therein; that the amount to be paid under the bond was not to be the full amount of the penalty as liquidated damages, but was to be only for indemnity within the limits of the specified penal sum; and that the issuance of an execution to enforce payment to the state of the full amount of that penal sum is not authorized by any provision in secs. 1549, Stats. 1913, or 176.10, Stats. 1935. If the latter had been intended, the specific provisions in those statutes in relation to the issuance of executions to satisfy the judgments, penalties, or forfeitures referred to therein, should have been supplemented by a provision which also authorized the issuance of an execution to recover payment of the full amount of the judgment entered in an action brought thereunder in the name of the state. In view of those specific provisions and the absence, in connection therewith, of any provision authorizing the issuance of such an execution for the benefit of the state, the latter is excluded under the maxim *expressio unius est exclusio alterius*. Consequently those provisions in secs. 1549, Stats. 1913, and 176.10 (3), Stats. 1935, governing the issuance of execution, when given due effect, compel the conclusion that all that the state is authorized to do is to bring an action on a bond in its name and enter judgment therein for the full penalty

thereof; but that because of the limited purposes for which executions are authorized under those provisions the bond is in effect solely an indemnity bond.

Furthermore, the construction given to the bond and statute in the *Helmann Case* was clearly wrong for another reason. By the following statements in the opinion in that case, payments which could be recovered under the bond were limited to such as were for the satisfaction of judgments recovered up to the time of the recovery of judgment by the state for the full penalty of the bond, to wit:

"It will be observed that no room is left by the statute for collection of any judgment, by enforcing the judgment upon the bond, not existing at the time of rendition of the latter. The entire proceeds of the bond liability are then available for any proper use. The bond is wholly merged in the judgment on it.

"We reach the conclusion that the legislative purpose was as expressly stated, that judgment in a case of this sort, where a breach is found, shall go for 'the full penalty thereof;' that being treated as liquidated damages; but that the court may apply the proceeds, primarily, to the satisfaction of existing judgment indebtedness." *State v. Helmann,* 163 Wis. 639, 646, 158 N. W. 286.

That would cut off the security intended to be afforded by the bonds for the payment of judgments recovered by any person under secs. 1560, Stats. 1913, or 176.35, Stats. 1935, for damages for injury to him as the result of the intoxication of a minor or a habitual drunkard to whom intoxicating liquor was sold or given in violation of those sections, unless he had recovered such judgment at the time of the entry of a judgment in favor of the state in its action on the bond; and would give to the state the full amount of the specified penalty, except as it was otherwise absorbed by other existing judgments, with the result that persons who suffer injury and damages thereafter for which they become entitled to re-

cover judgment under sec. 1560, Stats. 1913, would be deprived of the recovery of any indemnity under the bond. That certainly was not the legislative intent. The statute did not say, as did the court that "the entire proceeds of the bond liability are then available for any proper use. The bond is wholly merged in the judgment;" and the court could not rightly read into the bond something that was not expressly there, and was contrary to all reasonable intendment.

Likewise, for similar reasons, unless the construction given to the bond is that it is but for indemnity, and that no execution can issue to enforce payment to the state of the full penalty for which it is entitled to have judgment entered in its action on the bond, the provisions in secs. 1549, Stats. 1913, and 176.10 (3), Stats. 1935, authorizing the entry of judgment thereon "for the full penalty thereof" would be inconsistent and in conflict with the provisions in secs. 1555, Stats. 1913, and 176.27, Stats. 1935, that a person selling or giving liquor to one to whom the sale or gift thereof has been forbidden shall forfeit the sum specified in the statute for each offense "to be recovered *upon his bond* in an action to be prosecuted by the town, county, village or city treasurer." Such inconsistency and conflict must be avoided, if reasonably possible, under the rule that a statute should be construed as a whole and effect given to every part thereof. *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 169 Wis. 183, 172 N. W. 230. That is accomplished by recognizing that the provisions in sec. 1549, Stats. 1913, and sub. (3), sec. 176.10, Stats. 1935, do not authorize the issuance of execution *ipso facto* on a judgment entered in the state's action for the full penalty named in the bond; but that, on the contrary, the only executions authorized are such "as may issue thereupon by order of the court therefor to satisfy any judgment that may have been recovered against the

principal named in said bond by reason of any breach in the conditions thereof or for any penalties or forfeitures incurred under this chapter" (*i. e.*, ch. 66, Stats. 1913; ch. 176, Stats. 1935). That clearly includes also judgments in actions prosecuted by injured persons under secs. 1560, Stats. 1913, or 176.35, Stats. 1935, or by municipal treasurers for the forfeiture recoverable under secs. 1555, Stats. 1913, or 176.27, Stats. 1935.

However, the state contends that notwithstanding the foregoing matters, which were not brought to the court's attention or considered in the *Helmann Case*, the construction then given to the bond and statute is controlling herein under the rules that it is presumed "when a statute or a clause or provision thereof has been construed by the court of last resort of a state, and the same is substantially re-enacted, the legislature adopts such construction, unless the contrary is clearly shown by the language of the act, or the rules of statutory construction have been changed;" and that "it is not necessary that a statute should have been literally re-enacted to authorize the presumption that it was re-enacted in the light of the settled judicial construction that the prior enactment had received." 25 R. C. L. p. 1075, § 297. On the other hand, the defendants contend that, by reason of changes and additions in relation to matters considered of significance in the opinion of the *Helmann Case,* there are substantial differences between the statutes then construed and the statutes now under consideration; and that therefore the construction given to sec. 1549, Stats. 1913, and the bond in the *Helmann Case* should not be held controlling in respect to sec. 176.10, Stats. 1935, and the bond in question herein. In that connection it must be noted that it was "in the absence of anything showing a contrary intention" that we stated in the *Thomas Case* that it must be presumed that the legislature intended the language incorpo-

rated in sec. 176.10, Stats. 1935, to mean what this court had theretofore construed it to mean in the *Helmann Case*. That presumption does not, however, necessarily follow, if there are material changes or additions in the later enactment which disclose a different intention; and, in so far as other points are now raised by reason of such changes and additions, which were not involved in the *Helmann Case* or called to our attention in the *Thomas Case*, neither of the decisions in those cases is now controlling. "What was not considered, was not decided." *Scobie v. Tax Comm., supra*. The opinion in the *Helmann Case* discloses that considerable significance was attached to the court's conclusion that there was no provision in the statutes for a general penalty to guard against many of the transgressions covered by conditions of the bond, unless the latter was construed to cover all transgressions. Thus the court said,—

"As we have said, the required condition of the bond covers many transgressions, which experience evidently showed at the time of the enactment of the statute, were liable to occur and should be guarded against by a general penalty. Many were not provided for in any other way. . . . On the other hand, if full effect were not given to the statute, there would be the absurd result of many features of the condition of the bond being wholly without remedy." *State v. Helmann*, 163 Wis. 639, 644, 158 N. W. 286.

Those conclusions are not applicable to a bond given under sec. 176.10, Stats. 1935, because penalties for all transgressions under ch. 176 are provided for by either specific penalty provisions therein, or by sec. 176.41, Stats. 1935, which reads, "Any person who shall violate any of the provisions of this chapter for which a specific penalty is not herein provided shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished . . ." by a fine or imprisonment and his license "shall be subject to

revocation." Likewise, as appears from the following statement in the opinion in the *Helmann Case,* the court also attached considerable significance to its conclusion that no such absurd or unreasonable result would follow from administering the statute in accordance with its construction, as would suggest ambiguity, to wit:

"Looking to the effects and consequences of administering the statute according to its plain ordinary sense, no absurd or unreasonable result would occur which suggests ambiguity. The penalty is not shockingly large. . . . The penalty is so small, in connection with the fact that it applies to all cases, as to rebut the idea that it was intended solely as security for payment of judgments for the recovery of money." *State v. Helmann,* 163 Wis. 639, 644, 158 N. W. 286.

The conclusion that no such absurd or unreasonable result would occur to suggest ambiguity is not applicable to bonds given under sec. 176.10, Stats. 1935, if they are construed as bonds given under sec. 1549, Stats. 1913, were construed in the *Helmann Case.* The mere increase in the amount of the prescribed penalty from $500 in 1913 to $1,000 in 1934 may not render the penalty so shockingly large or effect a result so absurd or unreasonable as to suggest ambiguity. But that clearly would be the result, in view of the following differences between provisions in sec. 1549, Stats. 1913, and provisions in sec. 176.10, Stats. 1935, if the construction adopted in the *Helmann Case* is applied also to the latter statute. Sec. 1549, Stats. 1913, authorized but one type of bond, *i. e.,* a bond for the uniform amount of $500 and with two sureties. But sec. 176.10, Stats. 1935, authorizes one or the other of several types of bonds, and they may be for various amounts. The bond may be executed by a surety company, and if so it must be "in the sum of one thousand dollars;" or it may be "a cash bond in an amount to be deter-

mined by the licensing authorities but not less than two hundred dollars;" or it may be "in lieu of either of such bonds any security named in subsection (7) of section 66.04, all to be approved by the authorities granting the license." If the "penal sum of one thousand dollars," required in a surety company bond is to be considered as the liquidated amount of the damages payable thereunder, then, manifestly, in comparison with only $200, considered as the liquidated damages under a bond with but $200 in cash or government securities as collateral, the difference between the amounts of $1,000 and $200, treated respectively as liquidated damages, is so shockingly great, and the consequence of construing the statute and bond so as to consider each of those amounts,— the greater as well as the lesser,—liquidated damages to be paid under bonds conditioned to guard against identical transgressions, and for either one or more of such transgressions, regardless of the trivial and insignificant, or the substantial and serious character and consequences thereof, is so absurd and unreasonable that it cannot be presumed reasonably that the penal sum of $1,000 required in a surety company bond was intended to be liquidated damages; or that notwithstanding the material differences between secs. 1549, Stats. 1913, and 176.10, Stats. 1935, in the respects stated, the latter was to have the same meaning as sec. 1549, Stats. 1913, was construed to have in the *Helmann Case*. Moreover, because of those absurd and unreasonable consequences, if the provision as to the penal sum of $1,000 were treated as liquidated damages, there certainly would be such ambiguity as to the meaning and effect of the statute and bond that they become the proper subject for construction (*Carchidi v. State,* 187 Wis. 438, 443, 204 N. W. 473); and, in view of that ambiguity, there is applicable the rule that when an amount is specified to be paid for one or more breaches of a contract, some of which are of but minor and

others of greater consequence, and the damages resulting therefrom, are uncertain and cannot be measured by any fixed rule, then the amount specified will be held to be a penalty and not liquidated damages. As was said in *Lyman v. Babcock,* 40 Wis. 503, 518,—

"On principle, we are very clear that in such a case the sum should be held as a penalty. For it appears to us that it would be as unjust to sanction a recovery of the sum agreed to be paid, alike for any one trivial breach, or for any one important breach, or for breach of the whole contract, as it would be to sanction such a recovery equally for damages certain and uncertain in their nature. The rule holding the sum to be a penalty in the latter case, goes upon the injustice of allowing such a recovery for a less amount of actual damages ascertained or readily ascertainable. And we cannot but think that there is like injustice in allowing such a recovery equally, in cases of damages uncertain indeed, but manifestly and materially different in amount; equally for breach of part of the contract, and for breach of the entire contract. Such a rule would not only put the same value on a small part as on a large part, but would put the same value on any part as on the whole."

To the same effect see *Madison v. American Sanitary Eng. Co.* 118 Wis. 480, 95 N. W. 1097; 2 Williston, Contracts, p. 1496, § 783; 4 Page, Contracts, p. 3690, § 2125.

As the defendants' obligation under the bond in question is for indemnity, and not for the payment of the full penal sum of $1,000, regardless of the nature, extent, or number of the breaches of conditions thereof, and the amount of damages resulting therefrom, there is no occasion to pass upon defenses based on defendant's contentions that if the bond was construed to be for liquidated damages, sec. 176.10, Stats. 1935, would be unconstitutional. However, sub. (3) thereof does clearly authorize the state to maintain this action on the facts alleged in the complaint, and, upon the establishment thereof, to have judgment entered herein

against the principals and their surety under the bond "for the full penalty thereof," even though the issuance of executions under that judgment is limited to executions to enforce payment of such judgments, penalties, or forfeitures as are referred to in that subsection. It follows that the facts alleged in the complaint are sufficient to state a cause of action as to which the matters alleged in the answers are insufficient to constitute a defense; and that therefore the order under review must be affirmed.

*By the Court.*—Order affirmed.